**Samuel Lovert JOHNSON, Appellant,**

v.

**The STATE of Texas.**

**No. 536–97.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 7, 1998.

Charles Hinton, Houston, for appellant.

S. Elaine Roch, Assistant District Attorney, Houston, Matthew Paul, State's Attorney, Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MANSFIELD, Judge, delivered the opinion of the Court, in which BAIRD, MEYERS, KELLER, PRICE, and HOLLAND, Judges, joined.

Article 35.16(c)(2) [1] provides that a defendant may challenge a prospective juror for cause if the prospective juror "has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely, either as a defense to some phase of the offense for which the defendant is being prosecuted or as a mitigation thereof or of the punishment therefor." We granted appellant's petition for discretionary review to determine whether a defendant may challenge a prospective juror for cause under Article 35.16(c)(2) if the prospective juror states unequivocally that he could not consider assessing the minimum legal punishment for a defendant found guilty of the offense charged as a principal.

### The Relevant Facts

On July 5, 1995, a Harris County grand jury indicted appellant for aggravated robbery. See Tex. Penal Code § 29.03(a)(2). On July 25, 1995, the case went to trial in the 209th District Court of Harris County. During *voir dire*, the State, apparently concerned that it might be able to prove appellant's guilt only as a party to the offense, explained the law of parties to the prospective jurors and asked them whether, if the evidence warranted it, they could find a defendant guilty of aggravated robbery as a party. See Tex. Penal Code § 7.02(a)(2). The prospective jurors indicated that they could. Later, defense counsel picked up on this general theme and asked the prospective jurors whether they could consider assessing the minimum legal punishment (imprisonment for five years) for a defendant found guilty of aggravated robbery as a principal. See Tex. Penal Code § 12.32. Two prospective jurors, Kelley and Clevenger, stated unequivocally that they could not, and the State made no attempt to rehabilitate them. Shortly thereafter, defense counsel chal-

---

1. All references to articles are to those in the Texas Code of Criminal Procedure.

lenged Kelley and Clevenger for cause on the ground that "a juror has to be able to consider the full range of punishment, not only for a person who would be a party, but for a person who would be a principal." The District Court, however, denied both challenges for cause. Defense counsel then took the necessary steps to preserve any error for appellate review. See *Jacobs v. State*, 787 S.W.2d 397, 405 (Tex.Crim.App.), *cert. denied,* 498 U.S. 882, 111 S.Ct. 231, 112 L.Ed.2d 185 (1990); *Cumbo v. State,* 760 S.W.2d 251, 253–254 (Tex.Crim.App.1988).

Later, at the guilt/innocence stage, the jury charge authorized conviction of appellant as a principal or as a party. The jury returned a general verdict of "guilty" and assessed appellant's punishment, enhanced by a prior felony conviction, at imprisonment for 75 years. See Tex. Penal Code § 12.42(c)(1).

On direct appeal, appellant argued, *inter alia,* that the District Court had erred in denying his challenges of prospective jurors Kelley and Clevenger for cause. Specifically, appellant contended that Kelley and Clevenger had been properly challengeable under Article 35.16(c)(2) because they had been biased against the minimum legal punishment for a defendant found guilty of aggravated robbery as a principal. In response, the State argued that Kelley and Clevenger had not been challengeable for cause because *voir dire* had shown only that they could not consider the minimum legal punishment in a particular circumstance, *i.e.,* when the defendant was found guilty as a principal.

The Fourteenth Court of Appeals adopted the State's theory and affirmed appellant's conviction. *Johnson v. State,* No. 14–95–00860–CR (Tex.App.—Houston [14th Dist.], delivered March 27, 1997) (not published). The Court of Appeals cited no controlling precedent, but it reasoned as follows:

> The legislature has set forth a range of punishment applicable to all phases of this offense. *See* Tex. Penal Code Ann. § 12.32 (Vernon 1994). It may be, therefore, that a prospective juror cannot assess the maximum punishment against one acting solely as a party or the minimum punishment for one acting as a principal, but this alone does not render him unfit for jury service. There are an infinite number of ways in which a hijacker can commit the offense of aggravated robbery. In its wisdom, the legislature has created a broad range of punishment to permit judges and juries the freedom carefully to tailor a sentence to fit both the offender and the crime. A prospective juror, therefore, must be able to consider the full range of punishment for the offense generally, and not for some specific manner and means of committing the offense.

> ... Here, the venire persons stated that they could not consider the full range of punishment only for the one hypothetical situation being discussed. Under these circumstances, we do not believe the trial court abused its discretion in failing to strike for cause venire persons 17 [Kelley] and 33 [Clevenger].

*Johnson v. State,* slip op. at 4–5.

We granted appellant's petition for discretionary review to determine whether the Court of Appeals had erred. See Tex.R.App. Proc. 66.3(c) & (d).

### Analysis

■■■ In a criminal trial, "both the [defendant] and the State ha[ve] the right to have jurors who believe in the full range of punishment." *Woodkins v. State,* 542 S.W.2d 855, 862 (Tex.Crim.App.1976). The right of the defendant arises from Article 35.16(c)(2), and the right of the State arises from Article 35.16(b)(3).[2] *Smith v. State,* 573 S.W.2d 763, 764 (Tex.Crim.App.1977); *Weaver v. State,* 476 S.W.2d 326, 327 (Tex.Crim.App.1972). Prospective jurors "must be able, in a sense, to conceive both of a situation in which the minimum penalty would be appropriate and of a situation in which the maximum penalty would be appropriate." *Fuller v. State,* 829 S.W.2d 191, 200 (Tex.Crim.App.1992), *cert. denied,* 508 U.S. 941, 113 S.Ct. 2418, 124

---

2. Article 35.16(b)(3) provides that the State may challenge a prospective juror for cause if the prospective juror "has a bias or prejudice against any phase of the law upon which the State is entitled to rely for conviction or punishment."

L.Ed.2d 640 (1993). What we meant in *Fuller* was that prospective jurors must be able to accept that, for the offense in question, the minimum legal punishment will be appropriate in some circumstances and the maximum legal punishment will be appropriate in some circumstances. In other words, prospective jurors must be able to keep an open mind with respect to punishment until they hear the evidence in the case being tried. Furthermore, they must be able to keep an open mind with respect to punishment regardless of whether the defendant might be found guilty as a principal or as a party, because the statutory range of punishment for any offense is the same whether the defendant is found guilty as a principal or as a party.

■ Under Article 35.16(c)(2), appellant was entitled to jurors who could accept that the minimum legal punishment would be appropriate in some circumstances for a defendant found guilty as a principal.[3] Because prospective jurors Kelley and Clevenger could not accept that, they were, as a matter of law, biased against a law applicable to the case upon which appellant was entitled to rely. *Williams v. State*, 773 S.W.2d 525, 536 (Tex.Crim.App.1988), *cert. denied*, 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 207 (1989). The District Court abused its discretion, therefore, in denying appellant's challenge of them for cause. *Ibid.*

■ It is true, as a general matter, that "[a] prospective juror ... must be able to consider the full range of punishment for the offense generally, and not for some specific manner and means of committing the offense." *Johnson v. State, supra*, slip op. at 5. After all, the law actually *requires* jurors to use the facts of the case being tried to tailor the punishment to the offense and the offender. *Sadler v. State*, 977 S.W.2d 140 (Tex.Crim.App.1998). But the Legislature has determined and codified that the full range of punishment for any offense is the same whether the defendant is found guilty as a principal or as a party. Therefore, a

prospective juror who does not "believe in the full range of punishment," *Woodkins v. State*, 542 S.W.2d at 862, for either a defendant found guilty as a principal or a defendant found guilty as a party, is biased against the law as established by the Legislature.

We vacate the judgment of the Court of Appeals and remand the case to that court for a harm analysis under Texas Rule of Appellate Procedure 44.2(b). See *Schutz v. State*, 957 S.W.2d 52, 74 (Tex.Crim.App. 1997); *Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App.1997).

MEYERS and KELLER, JJ., each filed a concurring opinion.

McCORMICK, P.J., filed a concurring and dissenting opinion.

WOMACK, J., filed a dissenting opinion.

OVERSTREET, J., dissented without a written opinion.

MEYERS, Judge, concurring.

I concur. In Texas, a prospective juror who cannot consider the full range of punishment, as set out by the law, is challengeable for cause. *Fuller v. State*, 829 S.W.2d 191, 200 (Tex.Crim.App.1992), *cert. denied* 508 U.S. 941, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993); *see also Woodkins v. State*, 542 S.W.2d 855, 862 (Tex.Crim.App.1976).

The range of punishment is set by statute. In the present case, the relevant statute makes no distinction between one convicted as a party and one convicted as a principal— both are subject to the same range of punishment if found guilty. As the majority points out, a juror who cannot keep an open mind as to the full range of punishment—that is, remain open to the idea that in some circumstances the minimum punishment will be appropriate and in some circumstances the maximum will be appropriate—is challengeable for cause via Article 35.16(c)(2) or Article 35.16(b)(3) of the Texas Code of Criminal Procedure.

---

**3.** We hasten to point out that, under Article 35.16(b)(3), the State is entitled to jurors who can accept that the *maximum* legal punishment will be appropriate in some circumstances for a

defendant found guilty as a *party*. In other words, what is sauce for the goose is sauce for the gander.

The rule set out in the majority opinion is that a prospective juror who cannot consider that in some circumstances the minimum punishment allowed would be appropriate for one convicted as a principal would be challengeable for cause. I note that the same rule would apply in the opposite situation—a prospective juror who could not consider that in some circumstances the maximum punishment allowed would be appropriate for one convicted as a party would also be challengeable for cause.

With these remarks, I join the majority opinion.

KELLER, Judge, concurring.

"Qualified prospective jurors must be willing to consider the full range of punishment applicable to the offense submitted for their consideration." *Banda v. State,* 890 S.W.2d 42, 55 (Tex.Crim.App.1994), *cert. denied,* U.S. , 515 U.S. 1105, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995). The inability to do so constitutes a bias or prejudice against the law and renders a prospective juror challengeable for cause by the defendant or by the State. *Pyles v. State,* 755 S.W.2d 98, 103 (Tex.Crim.App.1988), *cert. denied,* 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988)(citing Texas Code of Criminal Procedure, Articles 35.16(b)(3) and (c)(2)). The question presented here is: what do we mean when we say "the offense submitted for consideration?" In voir dire, the issue arises when a party asks a prospective juror a question regarding his ability to consider the full range of punishment under a certain set of circumstances. If the party's question and the prospective juror's answer illustrate that the prospective juror would be unable to consider the full range of punishment under circumstances that *merely* comprise the offense submitted for consideration, then the prospective juror is challengeable for cause. If, however, the question and answer show only that the prospective juror would be unable to consider the full range of punishment for a set of circumstances that go *beyond* the "offense submitted for consideration," then the juror is not challengeable for

cause on the basis that he could not consider the full range of punishment.

Several alternative definitions of "the offense submitted for consideration" present themselves. I will characterize these differing approaches as (1) the classification approach, (2) the holistic approach, and (3) the evidentiary approach.

(1) *The Classification Approach.* First, we could define "the offense submitted for consideration" as any statutory classification that could be applicable to the case at hand to which the full range of punishment would apply. Statutory classifications would include the elements of an offense as defined in a section or subsection of a statute, general principles of liability such as party liability and transferred intent, and/or certain mitigation issues that may further define the degree of punishment such as "sudden passion" in a murder case or "release in a safe place" in an aggravated kidnapping prosecution. *See* Texas Penal Code § 6.04(b)(transferred intent), § 7.02 (party liability), § 19.02(d)(sudden passion), § 20.04(d) (release in a safe place).[1] Under this definition, any combination of statutory elements constituting a convictable offense in the case in question would be an "offense submitted for consideration." Hence, a given case could well have multiple offenses submitted for consideration, based upon alternative legal theories for committing the offense, and persons on the venire would have to be able to consider the full range of punishment for each one.

Take, for example, an indictment for murder which alleges alternate theories of liability, those being intentionally and knowingly causing the death of the victim (Sec.19.02(b)(1) murder) and felony murder (Sec.19.02(b)(3) murder.) Under the classification approach a prospective juror must be able to consider the full range of punishment for both intentional murder and for felony murder. If he could not consider the full range of punishment for even one of the theories he would be challengeable for cause. But, he would *not* be challengeable for cause for an inability to consider the full range of punishment for murder under Sec.

1. All further references to sections are to the Texas Penal Code unless otherwise specified.

19.02(b)(2)(serious bodily injury murder), because that variant of murder was not plead.

(2) *The Holistic Approach.* A second possible approach would be to hold that some but not all statutory classifications to which the full range of punishment applies are considered as part of the offense submitted for consideration. One formulation of this approach would be to exclude general principles of liability as constituting separately submittable offenses. Under this scenario, party and principle liability would simply be considered alternative methods for committing a particular offense submitted. A second formulation of the holistic approach would be to hold that alternative theories contained in a Penal Code section should not be considered as constituting separately submittable offenses. Under this formulation, a particular Penal Code section, such as § 19.02 (Murder) would constitute the submitted offense, and subsections (b)(1), (2), and (3)(intentional/knowing murder, serious bodily injury murder, and felony murder respectively) would constitute merely different methods of committing the submitted offense instead of being considered independently submitted offenses. Under this "section" definition, a prospective juror would not be challengeable for cause for being unable to consider the full range of punishment for a particular legal theory of the offense so long as he could consider the full range of punishment for the "submitted offense" (murder) as a whole. In the murder indictment example, a prospective juror would not be challengeable for cause even if he could not consider the full range of punishment for the two theories plead, as long as he could consider the full range of punishment for the unplead theory (Sec.19.02(b)(2) serious bodily injury murder).

(3) *The Evidentiary Approach.* A third possible formulation would be that one should determine the submitted offense by examining the facts of the case. Such an inquiry would entail examining the particular conduct committed by the defendant and asking a prospective juror if he could consider the full range of punishment for a person committing that conduct.

Of these three options, I believe that the classification approach is preferable. In my opinion, it is the formulation most consistent with the legislature's intent, case law, reason, and fairness.

The evidentiary approach may be easily dispensed with. We have recently held that approach to be invalid. *Sadler v. State,* 977 S.W.2d 140 (Tex.Crim.App.1998) (prospective juror is not required to consider the full range of punishment under the particular facts of the case). This holding is consistent with past case law on the subject. *See Faulder v. State,* 745 S.W.2d 327, 339 (Tex.Crim.App.1987)(prospective juror must be able to consider the possibility of probation for the offense of murder but is not required to consider probation for the offense of murder in a particular factual situation).

The downfall of the evidentiary approach paves the way for the conflict between the holistic and classification approaches. The holistic approach would characterize separate theories of the "same offense" (e.g., Sec.19.02(b)(1),(2), and (3)) as factual matters upon which prospective jurors may validly prejudge punishment, as long as they can consider the full range of punishment for at least one theory of the submitted offense (Sec.19.02(b) murder). The classification approach, by contrast, holds that separate legal theories are in fact legal definitions of the offense to which the full range of punishment must apply.

Case law supports the classification approach. In the capital murder arena, we have stated that a prospective juror must be able to assess the death penalty for the particular statutory legal theory of capital murder found in § 19.03 that is on trial:

> [P]otential jurors must be able to set aside their personal preferences and biases to consider as death eligible *all those defined as death eligible* by Section 19.03 of the Texas Penal Code and Article 37.071 of the Texas Code of Criminal Procedure. . . . [J]urors may not substitute legal categories of death eligibility with their personal preferences and biases and thereby place themselves above the law.

*Howard v. State,* 941 S.W.2d 102, 128 (Tex.Crim.App.1996)(emphasis in original, ellipsis inserted)(quoting *Rachal v. State,* 917 S.W.2d 799, 812–813 (Tex.Crim.App.1996) (plurality opinion)). For example, a juror, in deciding a capital murder case, is not free to reject "murder in the course of burglary" as a valid criteria for a sentence of death because the law provides otherwise. *Howard,* 941 S.W.2d at 128 (discussing *Fuller v. State,* 829 S.W.2d 191, 200 (Tex.Crim.App.1992) and citing its holding that a juror was challengeable for cause when she indicated that she could assess the death penalty only for serial killers); *see also Wilson v. State,* 863 S.W.2d 59, 70 n. 2 (Miller, J. concurring)(prospective juror challengeable for cause when, to give the death penalty, he requires evidence of capital murder that constitutes an offense under a different subsection of the statute from the crime with which he is charged). If the holistic approach were correct, one would have to say that the "submitted offense" was "capital murder" and the various methods of committing that offense outlined in § 19.03(a)(1)–(8) are simply different fact situations which a juror is free to decide do not merit the death penalty (i.e. do not show future dangerousness). But, consistent with the classification approach, case law holds that a prospective juror must be able to consider assessing the death penalty for each statutory scenario for capital murder in issue in the case at hand.

In addition, we have indicated that a prospective juror is challengeable for cause if he cannot assess the death penalty against a non-trigger person. *Phillips v. State,* 701 S.W.2d 875, 884 (Tex.Crim.App.1985). *Phillips* is not unequivocal authority for that proposition, however, because the prospective juror in that case also stated that he could not find a non-trigger person guilty of capital murder. *Id.*[2] And we have indicated that a juror is challengeable for cause if he cannot consider the full range of punishment for felony murder—although that case is also ambiguous. *Smith v. State,* 683 S.W.2d 393, 398 (Tex.Crim.App.1984)(upholding State's

challenge for cause on the ground that prospective juror could not consider minimum range of punishment for felony murder; the case is ambiguous because, arguably, the juror's response showed an inability to assess punishment for murder in general).

One can, of course, draw distinctions between capital cases, non-capital cases, and general principles of liability. In capital cases, there are only two possible punishments: life or death. If a juror excludes one of the statutory classifications of capital murder from the purview of the death penalty, that juror has clearly frustrated the Legislature's intent, which was to make the death penalty an available punishment in that situation. Non-capital cases, by contrast, involve a range of punishment rather than two stark alternatives. And, general principles of liability, such as party liability and transferred intent, can be distinguished from questions involving offense-specific elements on the ground that these general principles are separated from the specific offenses in the Penal Code and need not be alleged in an indictment.

But I question whether those difference are important. A persuasive argument can still be made, even in non-capital cases, that: the Legislature must have intended that prospective jurors be able to consider the full range of punishment for the different statutory classifications because it subjected those classifications to the range of punishment provided. That reasoning also applies to general principles of liability: the legislature subjected parties and persons with "transferred intent" to the same range of punishments as the principal offenses, and therefore, must have intended jurors to consider the range of punishment involved. And while general principles of liability need not be alleged in an indictment, those principles are nevertheless used in measuring evidentiary sufficiency, and such principles, if raised by the evidence, would be included in a correct jury charge. *See Malik v. State,* 953 S.W.2d 234, 239–240 (Tex.Crim.App.

---

**2.** Judge Campbell believed that *Phillips* stood for the proposition that a prospective juror is challengeable for cause if he cannot answer the future dangerousness punishment issue affirma-

tively when the defendant is a non-trigger person. *Garrett v. State,* 851 S.W.2d 853, 863–864 (Tex.Crim.App.1993)(Campbell, J. dissenting).

1997). In most important respects, general principles of liability are treated as offense elements.

Moreover, attempting to pick and choose which statutory classifications require consideration of the full range of punishment risks creating a muddled jurisprudence in which trial judges and litigants have difficulty distinguishing between prospective jurors who are challengeable and those who are not. By contrast, the classification approach—holding that *any* statutory classification, implicated by the indictment, to which a range of punishment applies constitutes the submitted offense—creates a bright-line rule that is easy to apply.

Bright-line rules can be fashioned under the holistic approach, but such rules create arbitrary results. For example, consider a bright-line rule holding that a "section" (such as § 19.02 "murder") is the submitted offense for which a juror must consider the full range of punishment. In a murder prosecution in which the State relies upon the felony murder subsection, a juror would not be challengeable for cause if he could not consider the maximum sentence for felony murder (an accidental killing during the course of a felony), so long as he could consider the maximum sentence for one of the other two types of murder outlined in § 19.02 (i.e. intentional/knowing killing or intent to commit serious bodily injury resulting in death). *See* § 19.02(b)(1)–(3). However, a prospective juror would be challengeable for cause if he could not consider the full range of punishment for intoxication manslaughter (in a prosecution for that offense) even if he could consider the full range for "ordinary" manslaughter, because the two offenses are found in separate Penal Code sections. *See and compare* § 19.04 (Manslaughter) and § 49.08 (Intoxication Manslaughter). This result holds true under the "section" formulation of the holistic approach—despite the fact that the two manslaughter offenses have the same range of punishment and are as much alike as intentional murder and felony murder are alike.

There is no reason to believe that the Legislature organized the offenses in its statutes with jury selection in mind; in fact, the prospect seems unlikely. Hence, no legitimate reason exists for treating offenses differently for jury selection purposes simply because of differences in offense grouping.

Further, there is no reason to believe that someone guilty as a party must necessarily be less culpable than one guilty as a principal. In some cases the accomplice may be less culpable, but in other cases he may be more culpable: sometimes the accomplice is the dominating influence exerted during the crime or the lead figure who plans the crime or sets the criminal action into motion. And, perhaps more importantly, the law of parties, when implicated, is functionally an element of the offense tried, and it makes little sense to attempt to distinguish that particular element from other elements for range of punishment purposes.

Similarly, a defendant's status as the "principal" is a legal classification to which the full range of punishment attaches. Being charged as a principal simply means that the State relies upon the elements of the specific offense without the benefit of the law of parties.

The classification approach to range of punishment issues avoids the problems inherent in the holistic approach. We need not attempt to pick and choose which legislative provisions require a respect for range of punishment and which do not. We need not draft a principle of law that will result in treating similarly related offenses differently. And we need not ignore the apparent legislative intent to subject its classifications to the ranges of punishment it specifies. A principled, bright-line rule is drawn by a rule that states: a prospective juror must be able to consider the full range of punishment for *any* legislative classification, implicated by the indictment, to which the range of punishment could apply.

The present case involves the distinction between principals and parties. Because liability as a principal involves a legal classification to which the full range of punishment could apply—to wit, the elements of the offense charged (without the benefit of the law of parties)—the prospective jurors in the present case were challengeable for cause

because they could not consider the full range of punishment for a principal.

With these comments, I join the majority opinion.

McCORMICK, Presiding Judge, concurring and dissenting.

I concur to remanding this case to the Court of Appeals for a harm analysis. However, I dissent to the Court's holding that the veniremembers were challengeable for cause.

Both parties in a criminal case have a statutory right to challenge veniremembers who have a bias or prejudice against a phase of the law upon which a party is entitled to rely. See Article 35.16(b)(3) and (c)(2), V.A.C.C.P. The obvious intent of Article 35.16 is to effectuate a defendant's Sixth Amendment right to an impartial jury while also providing the prosecution a statutory right to an impartial jury. In other words, our Legislature has statutorily decided that both sides in a criminal case are entitled to a fair trial.

The veniremembers in this case were not challengeable for cause under this Court's decision in *Garrett v. State* which overruled direct precedent, and has been used to overrule various other parallel precedents,[1] of this Court. See *Garrett v. State*, 851 S.W.2d 853, 860 (Tex.Cr.App.1993), and at 861–64 (Campbell, J.) (discussing parallel precedents *Garrett* effectively overruled). Fairly and consistently applied, *Garrett* should cut a wide swath through this Court's parallel pre-

cedents making no distinctions between defense challenges for cause and prosecution challenges for cause. See *Garrett*, 851 S.W.2d at 861–64 (Campbell, J., dissenting). To be consistent with *Garrett, Howard, Zinger* and *Castillo*, the Court should decide the veniremembers in this case were not challengeable for cause.

*Garrett* relied on what it characterizes as a veniremember's "minimum threshold level of reasonable doubt" rationale to overrule precedent which had held a veniremember who categorically refuses in a capital case to consider affirmatively answering the "future dangerousness" special issue based on the facts of the offense itself is subject to a challenge for cause. See *Garrett*, 851 S.W.2d at 857–61.[2] The rationale for the unprecedented new rule announced in *Garrett* is "a venireperson who categorically refuses to answer the ["future dangerousness"] special issue on nothing more than evidence of the capital offense itself may only be indicating that his threshold for proof beyond a reasonable doubt is somewhat higher than the minimum that the law recognizes as sufficient."[3] *Rachal v. State*, 917 S.W.2d 799, 820 (Tex.Cr. App.) (Clinton, J., concurring in the judgment), cert.denied, —— U.S. ——, 117 S.Ct. 614, 136 L.Ed.2d 539 (1996) (explaining *Garrett's* rationale); see *Garrett*, 851 S.W.2d at 860 (veniremember "who indicates he would set his reasonable doubt threshold higher than the legal minimum" does not demonstrate a prejudice against the law).[4]

---

1. See *Howard v. State*, 941 S.W.2d 102, 126–30 (Tex.Cr.App.1996) (op. on reh'g) (prosecution challenge for cause erroneously granted); *Zinger v. State*, 932 S.W.2d 511, 513–14 (Tex.Cr.App. 1996) (same); *Castillo v. State*, 913 S.W.2d 529, 532–37 (Tex.Cr.App.1995) (same).

2. Therefore, under *Garrett*, the defense apparently is not entitled to a favorable ruling on a challenge for cause to a veniremember who categorically refuses in a capital case to consider affirmatively answering the mitigating evidence special issue based on the facts of the offense. But cf. *First v. State*, 846 S.W.2d 836, 837 (Tex.Cr.App.1992).

3. Therefore, under *Garrett*, a veniremember who says he will *always* affirmatively answer the "future dangerousness" special issue based on the facts of the offense itself is not subject to a challenge for cause since this veniremember only

holds the prosecution to the low "end of the range" of reasonable doubt. See *Garrett*, 851 S.W.2d at 860; *Castillo*, 913 S.W.2d at 533 (as long as the law permits a range of "reasonable doubt," the veniremember who says he will hold the prosecution to the "high end of the range" is not requiring anything that the law does not tolerate).

4. *Garrett* mischaracterizes the nature of the inquiry. The inquiry in cases like *Garrett* is whether the veniremember can consider affirmatively answering the "future dangerousness" special issue based on the facts of the offense. This inquiry does not seek to commit the veniremember to answer this special issue affirmatively based on the facts of the offense. *The inquiry is only whether the veniremember can consider all the evidence in answering the "future dangerousness" special issue.* This has absolutely nothing to do

After *Garrett*, this veniremember is not subject to a challenge for cause unless he says "he would not answer the ["future dangerousness"] special issue affirmatively [based on the facts of the offense itself] even if the facts of the offense itself convinced him beyond a reasonable doubt that" this special issue should be answered affirmatively. See *Rachal*, 917 S.W.2d at 820–21 (Clinton, J., concurring in the judgment). Under *Garrett*, this veniremember "really does hold the State to a higher burden of proof than the law allows." *Id.*

*Garrett's* "minimum threshold level of reasonable doubt" rationale was applied in *Castillo* to overrule more precedent which had held a veniremember who categorically refuses to consider convicting on the basis of one eyewitness is subject to a challenge for cause.[5] See *Castillo*, 913 S.W.2d at 532–35.[6] After *Castillo*, this veniremember is not subject to a challenge for cause unless he categorically refuses to consider convicting on the basis of one eyewitness even if he believes that witness beyond a reasonable doubt. See *Castillo*, 913 S.W.2d at 533; see also *Rachal*, 917 S.W.2d at 818–21 (Clinton, J., concurring in the judgment).[7]

*Garrett's* "minimum threshold level of reasonable doubt" rationale was applied in *Howard* to overrule more parallel precedent to the effect that a veniremember who categorically refuses in a capital case to consider affirmatively answering the "future dangerousness" special issue without evidence the defendant had committed a prior murder is subject to a challenge for cause. See *Howard*, 941 S.W.2d at 127–29 (op. on reh'g).[8] After *Howard*, this veniremember is not subject to a challenge for cause unless she categorically refuses to consider affirmatively answering the "future dangerousness" special issue without evidence the defendant had committed a prior murder even if other evidence convinces her beyond a reasonable doubt that this special issue should be answered affirmatively. See *Howard*, 941 S.W.2d at 127 (op. on reh'g); see also *Rachal*, 917 S.W.2d at 818–21 (Clinton, J., concurring in the judgment).

In this case, the veniremembers categorically refused to consider the minimum (or full range of) punishment for a defendant convicted as a principal. Under *Garrett's* rationale, these veniremembers were not subject to a challenge for cause. They did not say they would categorically refuse to consider the minimum punishment even if the evidence otherwise convinced them the minimum punishment was appropriate. These veniremembers merely indicated their threshold for being convinced the minimum

---

with a veniremember's "minimum threshold level of reasonable doubt."

5. *Castillo* repeated *Garrett's* mistake by mischaracterizing the nature of the inquiry. The inquiry is whether the veniremember can consider all the evidence in deciding guilt which has nothing to do with a veniremember's "minimum threshold level of reasonable doubt."

6. Therefore, after *Castillo*, the defense apparently is not entitled to a favorable ruling on a challenge for cause to a veniremember who categorically refuses to consider an affirmative defense or any other defense based on the testimony of a single witness. And, the prosecution apparently is not entitled to a favorable ruling on a challenge for cause to a veniremember who categorically refuses to consider convicting without eyewitness testimony despite this Court's precedents to the contrary. See *White v. State*, 779 S.W.2d 809, 822 (Tex.Cr.App.), cert. denied, 495 U.S. 962, 110 S.Ct. 2575, 109 L.Ed.2d 757 (1990) (veniremember who cannot convict without eyewitness testimony is subject to a challenge for cause). The prosecution also is apparently not entitled to a favorable ruling on a challenge for cause to a veniremember who categorically refuses to convict without 1,000 eyewitnesses. The defense also is apparently not entitled to a favorable ruling on a challenge for cause to a veniremember who categorically refuses to consider an affirmative defense without 1,000 eyewitnesses.

7. After the veniremember in *Zinger* categorically refused to consider convicting on the basis of one eyewitness, he later said he could never get to the point of saying even if he believed the witness beyond a reasonable doubt when the veniremember was asked the extra question required by *Garrett* and *Castillo*. See *Zinger*, 932 S.W.2d at 512. This demonstrates an inability to consider all the evidence in deciding guilt since the veniremember said he could never get to the point of considering whether the eyewitness convinced him beyond a reasonable doubt. This Court nevertheless held the veniremember in *Zinger* was not challengeable for cause. See *id.*

8. *Howard* repeated *Garrett's* and *Castillo's* mistakes by mischaracterizing the nature of the inquiry.

punishment should be assessed was "somewhat higher than the minimum that the law recognizes as sufficient." Compare *Rachal,* 917 S.W.2d at 820 (Clinton, J., concurring in the judgment). "Unless we are prepared to hold that jurors must always" assess the minimum punishment, then under *Garrett* it cannot be said that such veniremembers have "a bias against the law." Compare *id.*

*Garrett* rejects the principle that venire members must be able to keep an open mind with respect to punishment until they hear the evidence in the case being tried. But, this essentially is the principle the Court's opinion applies in this case to decide the *defense* challenges for cause were erroneously denied. See majority opinion, *Johnson v. State,* 406 S.W.2d at 4 (prospective jurors must be able to keep an open mind with respect to punishment until they hear the evidence in the case being tried).

To support its holding in this case, footnote three of the Court's opinion claims "the State is entitled to jurors who can accept that the *maximum* legal punishment will be appropriate in some circumstances for a defendant found guilty as a *party.*" (Emphasis in Original). This states a pre-*Garrett* holding of this Court in *Phillips v. State,* 701 S.W.2d 875 (Tex.Cr.App.1985), cert.denied, 477 U.S. 909, 106 S.Ct. 3285, 91 L.Ed.2d 574 (1986) (veniremember who says he could never answer special issues in such a way as to require imposition of the death penalty for defendant found guilty of capital murder as a party was subject to prosecution challenge for cause).

Therefore, the Court essentially relies on *Phillips* for its holding in this case. But, *Phillips* and *Garrett* cannot be reconciled. Under *Garrett,* a veniremember like the one in *Phillips* is not challengeable for cause because this veniremember merely indicates his "threshold for proof beyond a reasonable doubt" is somewhat higher than the minimum that the law recognizes as sufficient. See *Garrett,* 851 S.W.2d at 860. It would appear *Phillips* is another one of *Garrett's*

collateral casualties. See *Garrett,* 851 S.W.2d at 861–64 (Campbell, J., dissenting).

Notwithstanding the foregoing, *Garrett's* "minimum threshold level of reasonable doubt" rationale is an irrelevant rabbit trail, and I would use this case to overrule *Garrett.* While a veniremember like the one in *Garrett* arguably may not increase the State's burden of proof, there is another and more important reason why this veniremember is subject to a challenge for cause which *Garrett* and its progeny completely ignored even though raised by the losing party in each one of these cases. See *Zinger,* 932 S.W.2d at 518 (McCormick, P.J., dissenting) (*Garrett* and *Castillo* completely ignored the losing party's alternative contentions on why the veniremembers were subject to a challenge for cause).[9]

The simple fact of the matter is the veniremembers in *Garrett* and *Castillo* demonstrated an inability to follow the law by categorically refusing to consider all the evidence in deciding guilt and punishment issues. But see majority opinion, *Johnson,* 406 at 4 (prospective jurors must be able to keep an open mind with respect to punishment until they hear the evidence in the case being tried). A trial court does not abuse its discretion to decide that a veniremember, who categorically refuses to consider affirmatively answering the "future dangerousness" special issue based on the facts of the offense itself, demonstrates an inability to consider all the evidence in answering this special issue *which also effectively demonstrates an inability to consider the full range of punishment for the offense.* A trial court does not abuse its discretion to decide that a veniremember, who categorically refuses to consider convicting on the basis of one eyewitness, demonstrates an inability to consider all the evidence in deciding guilt. A trial court does not abuse its discretion to decide these veniremembers demonstrate an inability to follow their oaths to render a verdict "according to the law and the evidence." See Article 35.22, V.A.C.C.P.[10]

---

**9.** Fairness requires that a judicial opinion address *all* the contentions made by the losing party on appeal especially when the Court has used *Garrett* to overrule more precedents and to

reverse more convictions costing the tax payers millions of dollars in retrials.

**10.** This Court has yet to address whether the veniremembers in cases like *Garrett* and *Castillo*

*Garrett's* "minimum threshold level of reasonable doubt" rationale also is based on a flawed premise. This premise is that without *Garrett* we must be "prepared to hold that jurors must always be convinced beyond a reasonable doubt on the basis of legally sufficient evidence." See *Castillo,* 913 S.W.2d at 533; *Rachal,* 917 S.W.2d at 820 (Clinton, J., concurring in the judgment) (explaining the premise of the "minimum threshold level of reasonable doubt" rationale). This is incorrect. All we must be prepared to hold is that jurors must be able to consider all the evidence in deciding guilt and punishment issues. See Article 35.22. And, a veniremember who categorically refuses to do so is challengeable for cause. This is what I always thought the law was until *Garrett* and its progeny came along.

This case demonstrates *Garrett's* flawed premise. In reversing this conviction, I do not understand the Court's opinion to hold that jurors must always assess the minimum punishment. I understand the Court's opinion to hold jurors should be able to *consider* assessing the minimum punishment under appropriate circumstances. This is no different from saying a veniremember should be able to *consider* convicting on the basis of one eyewitness (*Castillo* ) or should be able to *consider* affirmatively answering the "future dangerousness" special issue based on the facts of the offense (*Garrett* ).

However, *Garrett* has effectively interpreted Article 35.16 to mean the parties (or, at least the prosecution) in a criminal case are not entitled to a favorable ruling on a challenge for cause to veniremembers who categorically refuse to consider all the evidence in deciding guilt and punishment issues.[11] In *Garrett* the veniremember demonstrated an inability to consider the full range of punishment by categorically refusing to consider all

the evidence in answering the "future dangerousness" special issue. Similarly the veniremembers in this case demonstrated an inability to consider all the evidence in deciding punishment by categorically refusing to consider the full range of punishment for a defendant convicted as a principal. They were not challengeable for cause under *Garrett*.

In this case, the Court should either overrule *Garrett* or follow it. The Court picks a third and what I consider to be the least desirable option which is to wholly ignore *Garrett* creating a glaring inconsistency and imbalance in how the Court interprets Article 35.16(b)(3) (prosecution challenges for cause) and Article 35.16(c)(2) (defense challenges for cause).

As this case demonstrates, *Garrett* apparently applies only to prosecution challenges for cause which means the citizens of this State, acting through their officials, are not entitled to a fair trial. This stands the clear legislative intent of Article 35.16(b)(3) on its head.

With these comments, I join the Court's judgment to remand the case to the Court of Appeals for a harm analysis. I dissent to everything else.

WOMACK, Judge, dissenting.

I think the proper analysis is the one Judge Keller calls the second formulation of the "holistic approach," *ante* at 408 (slip op. at 2). All a juror need be able to do is to be open to assessing a minimum punishment for some form of aggravated robbery, and a maximum punishment for some form of aggravated robbery. This I believe to be consistent with the wide ranges of punishment attached to offenses in the Penal Code, and to the legislative directive that the Code be

---

demonstrate an inability to consider all the evidence in deciding guilt and punishment issues even though the losing party made this contention in each one of these cases. See Footnote 10. *Garrett's* "minimum threshold level of reasonable doubt" rationale does not answer, and is completely unresponsive to, the contention that these veniremembers categorically refuse to consider all the evidence in deciding guilt and punishment issues. See *Zinger,* 932 S.W.2d at 518 (McCormick, P.J., dissenting).

11. Therefore, under *Garrett* a defendant is not entitled to a favorable ruling on a challenge for cause to a veniremember who categorically refuses to consider all the evidence in answering the mitigating evidence special issue at the punishment phase of a capital murder trial. But see *Garcia v. State,* 919 S.W.2d 370, 399–400 (Tex. Cr.App.1994).

construed "to prescribe penalties that are proportionate to the seriousness of offenses and that permit recognition of differences in rehabilitation possibilities among individual offenders." Penal Code § 1.02(3). I would affirm the judgment below.