Jon Lee Allen Sr. v. State of Texas
















IN THE
TENTH COURT OF APPEALS
 

No. 10-00-067-CR

Â Â Â Â Â JON LEE ALLEN, SR.,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 18th District Court
Johnson County, Texas
Trial Court # F33537
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Jon Lee Allen, Sr. pled guilty to and was convicted of three counts of aggravated sexual
assault. Allen asked the jury to assess punishment. They sentenced him to 75 years in prison on
each count. He appeals, asserting error in the denial of his challenges for cause during voir dire. 
We affirm.
Background
Â Â Â Â Â Â Allen was married in 1982 and had two children during the marriage, a boy and a girl. He
began sexually assaulting his daughter while she was in third grade. She was seven or eight-years-old at the time the assaults began. When she was older, Allen paid her for the assaults. Allen
sexually assaulted her about two or more times a month until she was twelve years old. She
finally told her mother about the assaults after a church retreat. Allenâs wife confronted him and,
although he initially denied what had happened, he admitted he had been sexually assaulting his
daughter. He moved out of the house, sought counseling, and contacted an abuse hotline. 
Challenge for Cause
Â Â Â Â Â Â In his first issue, Allen contends the trial court erred when it either expressly or implicitly
denied 21 of his 23 challenges for cause at the conclusion of voir dire. Allen first listed 20
prospective jurors whom he challenged for cause, alleging these jurors could not consider the
entire range of punishment. Later, Allen added three more prospective jurors to the list. 
Applicable Law
Â Â Â Â Â Â Qualified prospective jurors must be willing to consider the full range of punishment
applicable to the offense submitted for their consideration. Banda v. State, 890 S.W.2d 42, 55
(Tex. Crim. App. 1994). They must be able to conceive of situations of where both a minimum
and maximum penalty would be appropriate. Fuller v. State, 829 S.W.2d 191, 200 (Tex. Crim.
App. 1992). An offense submitted for the juryâs consideration is any statutory classification that
could be applicable to the case at hand to which the full punishment would apply. Johnson v.
State, 982 S.W.2d 403, 407 (Tex. Crim. App. 1998) (Keller, J., concurring); Brantley v. State,
No. 10-99-046-CR, slip op. at 9 (Tex. App.âWaco, May 2, 2001, no pet. h.). Under this
definition, any combination of statutory elements constituting a convictable offense in the case in
question would be an offense submitted for consideration. Johnson, 982 S.W.2d at 407. The
inability to consider the full range of punishment constitutes a bias or prejudice against the law and
renders a prospective juror challengeable for cause by the defendant or by the State. Fuller, 829
S.W.2d at 200; Pyles v. State, 755 S.W.2d 98, 103 (Tex. Crim. App. 1988). However, a
prospective juror is not required to consider the full range of punishment under the particular facts
of the case. Sadler v. State, 977 S.W.2d 140, 143 (Tex. Crim. App. 1998); Chimney v. State, 6
S.W.3d 681 (Tex. App.âWaco 1999, no pet.).
Voir Dire
Â Â Â Â Â Â Because punishment was the sole issue for the jury to resolve, the parties spent a great deal
of time questioning the prospective jurors about whether they could consider the entire range of
punishment for an aggravated sexual assault offense. The State informed the jury that because
Allen filed a sworn application for probation, probation became an option for them to consider.


 
The word âconsiderâ was emphasized and explained to the panel. They were told they would have
to consider, or keep an open mind about, probation until they heard all the facts of the case. The
State then gave a couple of hypotheticals to the panel of an aggravated sexual assault where a child
was involved.
And let me give you an example of a case where â a sexual assault of a child
case....What if you have a 17-year-old boy, just turned 17, and he got a new car and he
is going to go on a date with a girl who is 13-years-old and 11 months and 30 days. 
Sheâs almost 14, one day less. They go on a date and one thing leads to another and that
17-year-old boy, whoâs never been in trouble before, he touches that girlâs breast, or he
touches her vaginal area. Would you consider probation? Sure you would. Are you
going to send that guy straight to the penitentiary at 17-years-old? Not going to happen. 
Would everybody consider probation in that case? Sure you will. Okay.
Â 
We could do another one. What if you had an 18-year-old boy and a 13 and 11-month-old girl and she was a very aggressive, going on 25, girl and he was just, you
know, kind of your normal 18-year-old boy and one thing led to another in the back seat
of a car and sexual relations occurred, would you consider probation in that case? 
Probably you would consider it. Not saying what you would do, but you would consider
it. Or what if there was alcohol involved on both parts? Maybe the girl brings a six-pack
with her. Would you consider probation in that case?

The State began to question the panel members individually about whether they would consider
probation. Five prospective jurors who could not consider probation, even under the scenarios
given, were eventually struck for cause after being challenged by the State.
Â Â Â Â Â Â Later, the State covered the other end of the punishment spectrum with the panel. 
Let me go to the other end. And to illustrate the point, Iâm going to walk way over
here. Could you consider giving 99 years, or life, on a sexual assault of a child case? 
And you say, âWhoa, thatâs a lot.â It is a lot. But weâve considered the low end of the
punishment range. Could everybody consider the high end of the punishment?...If you
canât consider giving a life sentence, then you cannot serve. It doesnât mean that youâre
going to give it. It means can you consider it in the right kind of case.

Two prospective jurors could not consider giving a life sentence for the offense. They were
challenged and struck for cause.
Â Â Â Â Â Â When Allenâs counsel began his voir dire examination, he also questioned the panel about
their ability to consider probation in a sexual assault of a child case. After starting his hypothetical
at an offense involving a 50-year-old man and a 5-year-old child, he narrowed it to a thirty-year-old man and a 10 to 12-year-old girl. Of those specifically questioned, four prospective jurors
stated they could consider probation under the defenseâs hypothetical. The remainder either could
not consider probation or found it difficult to consider probation under this hypothetical.
Â Â Â Â Â Â At the conclusion of Allenâs voir dire examination, defense counsel announced challenges for
cause of 23 prospective jurors. The trial court allowed the State to question those jurors again
about their ability to consider probation. The State questioned only those 16 jurors in the strike
range, in essence, those who could potentially be selected as jurors. The original hypothetical of
a 17-year-old boy and an almost 14 year-old girl was again proposed. The State, however, added
two more scenarios for the prospective jurorsâ consideration. One involved a 19-year-old boy with
a diminished mental capacity and a 13-year-old girl, and the other involved an intoxicated 20-year-old and a 13-year-old. Only 2 of the 16 specifically questioned decided that they could not
consider probation under those circumstances. The trial court granted Allenâs challenges for cause
of those two prospective jurors.
Â Â Â Â Â Â The court specifically denied 13 challenges, and because the remaining 8 challenged
prospective jurors were not struck for cause, implicitly denied those challenges. See Tex. R. App.
P. 33.1(a)(2)(A). Allen ultimately used peremptory challenges to strike 6 of the prospective jurors
challenged for cause. He used 4 peremptories to strike others not challenged for cause. No
additional peremptories were requested or granted.
Preservation
Â Â Â Â Â Â The State contends that Allen did not preserve this issue for our review because he failed to
request additional peremptory challenges and failed to identify which objectionable juror remained
before the jury was empaneled. We disagree. Since 1944, harm, not preservation, has been
demonstrated when an appellant (1) exercises his peremptory challenges on the prospective juror
whom the trial court erroneously failed to excuse for cause, (2) exhausts his peremptory
challenges, (3) is denied a request for additional challenges, and (4) identifies an objectionable
juror who sat on the case. Johnson v. State, 43 S.W.3d 1, 5-6 (Tex. Crim. App. 2001). The
Court of Criminal Appeals has recently acknowledged that in the past, the Courtâs opinions had
confused preservation of error and harm issues within the context of an erroneous denial of a
challenge for cause. Id. at n.6. Thus, the steps allegedly missed by Allen are used to determine
harm after error, if any, rather than preservation of the issue. 
Application
Â Â Â Â Â Â The prospective jurors that remained on the panel at the conclusion of voir dire were able to
conceive of situations where either probation or the maximum punishment, 99 years or life, would
be appropriate for the offense submitted for their consideration. That the prospective jurors may
not have been able to consider probation for the particular hypothetical proposed by Allen is of
no consequence. While the questions and answers may have been appropriate to assist Allen in
making his peremptory challenges, a negative answer did not support a challenge for cause. We
note that the hypothetical proposed came perilously close to an attempt to commit the prospective
jurors to a certain punishment based on the facts peculiar to the case being tried.
Â Â Â Â Â Â We hold the trial court did not err in denying Allenâs challenges for cause. His first issue is
overruled. Because the jurors challenged were not subject to being struck for cause, we need not
determine whether Allenâs counsel was ineffective for failing to preserve the issue for review.
Conclusion
Â Â Â Â Â Â The trial courtâs judgment is affirmed.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â TOM GRAY
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Before Chief Justice Davis,
Â Â Â Â Â Â Justice Vance, and
Â Â Â Â Â Â Justice Gray
Affirmed 
Opinion delivered and filed August 1, 2001
Publish



 a premises created a condition
that posed an unreasonable risk of harm may support an inference of knowledge.
. . .  Creating the condition does not establish knowledge as a matter of law
for purposes of premises liability, however, creation of the condition is
circumstantial evidence of knowledge.ÂÂ  Burns v. Baylor Health Care Sys.,
125 S.W.3d 589, 599 (Tex. App.ÂEl Paso 2003, no pet.) (citing Keetch v.
Kroger Co., 845 S.W.2d 262, 265-66 (Tex. 1992)).Â  This circumstantial
evidence is someÂmore than a scintilla ofÂevidence of TxDOTÂs actual knowledge.Â 
We next turn to constructive knowledge.

Constructive knowledge can be established by
showing that the condition had existed long enough for the owner to have
discovered it upon reasonable inspection.Â  CMH Homes, Inc. v. Daenen,
15 S.W.3d 97, 102-03 (Tex. 2000); see also Harris County v. Eaton, 573
S.W.2d 177, 180 (Tex. 1978).Â  Thus, we focus on whether there is some evidence
that TxDOT should have discovered the loose gravel condition upon reasonable
inspection.

James Marek, one of the TxDOT crew members, said
that he inspected the patch by looking at it and that it looked goodÂthere was
no Âsignificant loose aggregateÂÂbut he did not walk on it.Â  David Maresch, the
dump truck driver, rolled over the gravel to pack it and looked at it, noticing
that there was ÂsomeÂ (Âjust a few rocksÂ) Âloose aggregate,Â which he said was
normal.Â  David Polk III disagreed with Maresch, saying that he did not notice
any loose rock and said it Âlooked pretty good,Â yet admitting that in his
deposition he had testified that he couldnÂt recall the job, though he said he
later recalled it upon reviewing his written statement.Â  None of the crew
testified about what time of day they were working on FM 979, and nothing in
the record supports the assertion in TxDOTÂs brief that the loose gravel
condition Âdid not arise until after normal business hours.Â

YorkÂs
accident happened early on the morning of October 29.Â  On the afternoon (just
after 5:00 p.m.) of the day the patch work was doneÂthe day before YorkÂs accidentÂBrenda Barnett hit the gravel and her car Âfishtailed.Â Â Later that
evening, Barnett was on the same road with her husband, who was driving slow
enough to watch for the gravel because she had told him about it, also
fishtailed on the loose gravel.Â  Also on that day (the record does not reflect the
time of day), JoAnn Langford slid on the loose gravel on the curve where York lost control, and LangfordÂs car spun around, facing the ditch on the other side of
the road.

Viewing the evidence in the light favorable to the
verdict, we hold that there is more than a scintilla of evidence that TxDOT had
constructive knowledge of the loose gravel condition.Â  In addition to the
circumstantial evidence arising from TxDOTÂs creation of the condition, the
evidence recited above about TxDOTÂs inspection, and the similar accidents on
the same day the patch work was done, reasonable and fair-minded jurors could
conclude that TxDOT could have discovered the loose gravel upon reasonable
inspection.Â  We overrule TxDOTÂs third issue.

Postjudgment Interest

Â 

In a cross-point, YorkÂs family members assert
that the judgment should be reformed to apply the postjudgment interest rate of
8%.Â  See Tex. Fin. Code Ann.
Â§ 304.003 (Vernon 2006).Â  TxDOT agrees.Â  We thus modify the judgment to reflect
a postjudgment interest rate of 8%.Â  As modified, the judgment is affirmed.

Â 

Â 

Â 

BILL VANCE

Justice

Â 

Â 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

Affirmed
as modified

Opinion
delivered and filed August 8, 2007

[CV06]









[1]
Â Â Â Â Â Â Â Â Â Â Â Â Â  TxDOT, a governmental unit, is
immune from both suit and liability for YorkÂs death unless its immunity is
waived by the terms of the Texas Tort Claims Act (TTCA).Â  See Tex. Civ. Prac. & Rem. Code Ann. Â§Â§ 101.021, 101.025 (Vernon 2005).Â 
The threshold inquiry in any TTCA suit is whether immunity has been waived
under section 101.021, which states that Â[a] governmental unit in the state is
liable for . . . personal injury and death so caused by a condition or use of
tangible personal or real property if the governmental unit would, were it a
private person, be liable to the claimant according to Texas law.ÂÂ  Id. Â§ 101.021(2).





[2] Â Â Â Â Â Â Â Â Â Â Â Â Â  TxDOTÂs Âordinarily slipperyÂ
argument also depends on its analogy between the loose gravel on the road and a
wet road, but this analogy has a major flaw:Â  a driver on a wet road knows that
the road is wet and therefore slippery and can take precautions such as slowing
down.Â  There is nothing unexpected or unusual about a wet road being slippery.Â 
See State DepÂt of Highways v. Kitchen, 867 S.W.2d 784, 786 (Tex. 1993) (holding that ice on bridge during winter was not a special defect because it is
not unexpected or unusual); cf. State DepÂt of Transp. v. OÂMalley,
28 S.W.3d 652, 656 (Tex. App.ÂCorpus Christi 2000, pet. denied) (ÂLike an
excavation or obstruction, a roadway covered with an excessive amount of loose
gravel is not something motorists can reasonably be expected to anticipate.Â); State v.
Wollesen, 93 S.W.3d 910, 913 (Tex. App.ÂAustin 2002, no pet.) (ÂLike
an excavation or obstruction, a roadway covered with an excessive amount of
loose gravel is unexpected and difficult to navigate.Â). Â In this
case, with no loose-gravel signage, drivers would not know there was loose
gravel on the curve that made the road either ordinarily or extraordinarily
slippery, and it would thus be unexpected or unusual.

Â 





[3] Â Â Â Â Â Â Â Â Â Â Â Â Â  Albeit in apparent dicta, the Austin Court
of Appeals affirmed the trial courtÂs determination that loose gravel was a
special defect.Â  Wollesen, 93 S.W.3d at 913-14 (ÂClearly, the presence
of the loose gravel unexpectedly and physically impaired WollesenÂs ability to
travel on the road.Â).

Â