**William Walton GLAUSER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–98–00891–CR, 01–98–00892–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 5, 2000.

Discretionary Review Refused
May 16, 2001.

Mike DeGuerin, Houston, for appellant.

Michael J. Guarino, Joel Hunter Bennett, Galveston, for State.

Panel consists of Justices O'CONNOR, HEDGES, and PRICE.*

## OPINION ON FURTHER MOTION FOR REHEARING AND FOR REHEARING EN BANC

PRICE, Justice.

We issued an opinion affirming appellant's convictions on March 16, 2000. Appellant's counsel filed a motion for rehearing which we denied in a per curiam opinion on May 18, 2000. Justice O'Connor filed a dissenting opinion on motion for rehearing.

On June 16, 2000, appellant filed a further motion for rehearing and for rehearing en banc. These motions are **denied.**

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

However, we withdraw our previous opinions and issue the following opinion.

Appellant, William Walton Glauser, was convicted by a jury of two charges of intoxication manslaughter. *See* TEX.PENAL CODE § 49.08. The jury assessed punishment at four years imprisonment in each case. In nine points of error, appellant challenges the legal and factual sufficiency of the evidence, and complains of the following trial errors: the trial court's overruling of his objection to the State's voir dire; the trial court's denial of two of appellant's challenges for cause; the State's jury arguments on guilt and punishment; and the trial court's submission to the jury of the special issue on the use of a deadly weapon. We affirm.

## THE FACTS

On Saturday, December 14, 1996, 18–year–old Jason Faul and 15 year old Autumn Alford spent the evening with friends in Galveston. Between 2:00 and 3:00 a.m. the next morning, Faul borrowed Amanda Nixon's 1988 Hyundai to take Alford home. Neither Faul nor Alford had been drinking.

During the early morning hours of December 15, 1996, Donald Ciaccio, traveling with passengers Gary Johnson and Dan Robinson, was driving south on Interstate 45 north of Almeda mall. A black Honda Accord, which appeared to be going 100 to 120 miles per hour, passed their vehicle. They later saw the same Honda parked on the shoulder of the road and a man urinating beside it. Ciaccio had his cruise control set on 67 miles per hour, and when he drove by the La Marque factory outlet stores, the Honda again passed him in the right lane. Ciaccio estimated its speed at over 100 miles an hour. About 150 yards south, Ciaccio saw the Honda run into the back of the Hyundai. Other than the Hyundai, there were no other cars in front of Ciaccio when appellant passed him. Ciaccio called 911 and stopped to help.

That same morning Robert Meier and his wife were driving south on Interstate 45 in Galveston County. Meier was driving his pickup at 65 miles per hour in the center lane when he noticed a vehicle approaching from behind. The vehicle changed lanes without signaling and went around Meier in the left lane so close that Meier thought the car was going to hit him. Meier estimated the vehicle's speed to be over 100 miles per hour because "it passed [him] like [he] was standing still." After it passed Meier, the vehicle returned to the center lane, again without signaling. Other than the speeding vehicle, Meier saw no other cars on the straight highway. About a mile to a mile and a half down the highway, Meier saw an "explosion, a ball of flame." He pulled over and stopped to render assistance.

Kenneth Walker, John Thayer, and Paul Pinkston were northbound on Interstate 45 that morning. As they crossed an overpass, they saw the explosion on the south side of the highway and also stopped to help. Walker jumped over the median and saw Faul on the highway. After checking Faul's body for a pulse, he proceeded toward the Hyundai.

Nixon's Hyundai, its headlights still on, was on fire, and Alford was in the front seat. Meier, Johnson, Walker, and Pinkston tried unsuccessfully to free her from the car, but the door was jammed and Alford's legs were trapped. The men flagged down other drivers, asking if anyone had a fire extinguisher or a chain to pull the door open. Alford begged them to put out the fire and pour water on her. She screamed that she was hot. They were not able to get her out of the car or extinguish the fire which engulfed the car. She died at the scene.

Appellant was standing next to his Honda Accord when Walker approached. Walker could smell alcohol on appellant. Appellant asked what happened, and Walker told him he had hit somebody. Appellant's response was that "they were stopped in the middle of the highway." Pinkston heard appellant say he did not see any lights or flashers.

Department of Public Safety Trooper Wayne Neubauer was dispatched to the scene at 2:52 a.m. and arrived at 2:55 a.m. The La Marque Fire Department, paramedics, the Galveston County Sheriff's Department, and the La Marque Police Department had already arrived. Neubauer saw a body, later identified as Faul, in the middle lane of Interstate 45. A red Hyundai was on fire. Appellant was standing beside his Honda. He told Neubauer that he was driving, and that "those stupid people just stopped in the road with no lights on." He also said that he had been going only 45 miles an hour, and that he put on his brakes and tried to miss them. Neubauer smelled a strong odor of alcoholic beverage on appellant's breath. According to Neubauer, appellant swayed as he stood and slurred his speech when he spoke. In Neubauer's opinion, appellant was intoxicated.

At the point of impact, Neubauer found no skid marks on the highway to indicate that appellant had applied his brakes before the collision. Neubauer testified that appellant's Honda in that situation was a deadly weapon. In Neubauer's opinion, a person traveling 67 miles an hour in the same lane as a disabled vehicle at this location would have seen the disabled vehicle in time to stop. The area was well lit by the lights from the La Marque factory outlet mall just north of the burn scene and by freeway street lights.

The right front side of the Honda sustained significant damage and had human blood and fibers in several locations. Neubauer concluded that Faul was outside the Hyundai at impact because of the severe damage to his legs. It is a reasonable inference from the evidence that, at impact, Faul was pushing the disabled Hyundai while Alford was steering from the driver's side.

Neubauer collected light bulbs from the Hyundai and submitted them to the crime lab. David Spence tested the bulbs and discovered that the two-filament bulb of the right rear brake/running light indicated that one of the filaments was burning at impact.

Appellant was taken by ambulance to John Sealy Hospital in Galveston. Neubauer directed Galveston County Sheriff's Deputy Donald Wheelus to collect a sample of appellant's blood. Wheelus went to the hospital and located appellant in the emergency room. He identified himself and advised appellant of his rights. Appellant consented to having a sample of his blood drawn. Cindy Siurko, a registered nurse working in the emergency room, drew the sample. She smelled alcohol on appellant's breath. After Wheelus left, Siurko heard appellant say to one of the nurses, "I'm f___ed, aren't I?" The nurse asked appellant what he meant, and he said, "Well, I have been drinking on and off all day and I had a couple of more drinks before the accident."

Wheelus took the blood sample to Neubauer who delivered it to the Department of Public Safety crime lab. The lab supervisor, Lou Haby, tested the sample and found it contained 0.21 grams of alcohol per one hundred milliliters of blood.

The Chief Medical Examiner for Galveston County, Dr. William Korndorfer, performed autopsies on the bodies of Faul and Alford. He determined that the numerous injuries to Faul were consistent with his

having been a pedestrian struck by an automobile traveling at a high rate of speed. Alford's body was badly burned, her legs and pelvis were broken, and the large blood vessels in the pelvis were torn. There was no soot in her mouth or lungs, indicating that, although she suffered from the heat and flames, she bled to death internally before breathing any smoke. Alford's injuries were consistent with her having been seated in a car that was struck from behind by another automobile traveling at a high rate of speed. Toxicology tests performed on both Faul and Alford were negative for alcohol and drugs.

Senior Trooper Kevin Bryce of the Department of Public Safety was asked to assist with accident reconstruction. He and Neubauer took measurements of the scene using a surveying instrument. He determined that the Honda traveled 331 feet after impact, and that the Hyundai traveled 158 feet on pavement and 31 feet on the grass. He calculated that if the Hyundai was stopped or moving at only one mile per hour, and if all four wheels of the Honda locked at impact, the speed of the Honda at impact was 111 miles per hour. If two wheels of the Honda locked at impact, its impact speed was 95 to 96 miles per hour. Assuming no braking or locking of the Honda's wheels after impact, its impact speed was 90 to 91 miles per hour. The most likely scenario, according to Bryce, was that only the front wheels of the Honda locked at impact, and this was because of metal collapse. He explained that post-impact skid marks ended near the front wheels of the Honda, and there were none from the rear wheels.

For the defense, a friend of appellant, Ned Snyder, testified that he was driving south on Interstate 45 between 2:00 and 3:00 a.m. on December 15, 1996, and witnessed the collision. He testified that he was in the center lane, and that about 250 yards ahead of him were several other cars. He saw a car move to the left, then another car hit the back of the car that caught fire. The car that was struck did not have taillights. He did not see any brake lights before the collision. Snyder stopped, and by then the Hyundai was burning. There was nothing he could do for the girl inside. He approached the black car and recognized appellant. Snyder did not believe appellant was intoxicated.

Appellant's father testified that when he arrived at the hospital at 5:00 a.m., appellant did not appear to be intoxicated. Angie Reckling and Robert Whilden testified that, on the night in question, they had dinner in a restaurant with appellant and his parents, and appellant did not appear to be intoxicated when he left at 12:30 a.m.

Mike James, an engineer and accident reconstruction expert, testified for appellant that in his opinion, only the right front wheel of the Honda locked at impact. Using this factor and the post-impact distances recorded by Bryce, James calculated that the speed of the Honda at impact was 80 miles per hour. Based on the measurements taken by Neubauer during his initial investigation at the scene, James calculated the Honda's impact speed at 77 miles per hour.[1]

## LEGAL SUFFICIENCY OF THE EVIDENCE

In point of error one, appellant challenges the legal sufficiency of the evidence to support his convictions. Specifically, he challenges the evidence of causation. Appellant argues the evidence did not prove

1. According to measurements Neubauer took that night, the Hyundai was 184 feet from the point of impact, and appellant's Honda was 298 feet from the point of impact.

that he caused the deaths of Faul and Alford "by reason of intoxication."

## A. The Law

The intoxication manslaughter statute provides, in pertinent part:

> (a) A person commits an offense if the person:
>
> (1) operates a motor vehicle in a public place, . . .; and
>
> (2) is intoxicated and by reason of that intoxication causes the death of another by accident or mistake.

TEX.PENAL CODE § 49.08(a).

In evaluating a claim of legal insufficiency of the evidence, we follow the usual standard of review. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *McDuff v. State*, 939 S.W.2d 607, 614 (Tex.Crim.App.1997).

## B. Analysis

■ Appellant correctly asserts the State must prove that a defendant's intoxication, and not just his operation of a vehicle, caused the fatal result. *See, e.g., Hardie v. State*, 588 S.W.2d 936, 939 (Tex. Crim.App.1979); *Daniel v. State*, 577 S.W.2d 231, 233–34 (Tex.Crim.App.1979); *Thomas v. State*, 756 S.W.2d 59, 61 (Tex. App.—Texarkana 1988, pet. ref'd).[2]

■ In this case, the evidence consistent with guilt showed that appellant was driving a Honda Accord on Interstate 45 at approximately 100 miles an hour at

night when the speed limit was 65. By his own admission, appellant had been drinking on and off all day and had a couple of more drinks before the accident. A blood test revealed appellant's blood alcohol content to be 0.21, more than twice the amount that defines intoxication in the Penal Code.[3] In an area that was well lit with no visible obstructions, appellant, without ever applying his brakes, hit Faul and the back of the disabled Hyundai, which had its headlights and at least one taillight on. In the investigating officer's opinion, someone in full command of his mental and physical faculties while driving 67 miles an hour would have been able to stop and avoid hitting the disabled vehicle.

The jury was properly charged concerning causation, and there was sufficient evidence admitted from which the jury could find beyond a reasonable doubt that appellant caused the deaths of Faul and Alford by reason of intoxication.

We overrule point of error one.

## FACTUAL SUFFICIENCY OF THE EVIDENCE

In point of error two, appellant contests the factual sufficiency of the evidence to support the causation element. The Court of Criminal Appeals recently reaffirmed its decision in *Clewis v. State*, 922 S.W.2d 126, 129–30 (Tex.Crim.App.1996), that the appellate courts of this State are constitutionally empowered to review a judgment of a trial court to determine the factual

---

**2.** These were appeals from involuntary manslaughter convictions under section 19.05(a)(2) of the pre–1994 Texas Penal Code. That statute provided, in part:

(a) A person commits an offense if he:

. . .

(2) by accident or mistake when operating a motor vehicle, airplane, helicopter, or boat while intoxicated and, by reason of such intoxication, causes the death of an individual.

*Amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3586, 3614, 3766. With the exception of the additional element that the motor vehicle, aircraft, or watercraft be operated in a public place, this statute and section 49.08(a) are substantially the same.

**3.** *See* TEX.PENAL CODE § 49.01(2)(B).

sufficiency of the evidence used to establish the elements of the offense. *Johnson v. State*, 23 S.W.3d 1, 6 (Tex.Crim.App. 2000). The standard of review announced in *Clewis* was restated, as follows:

> In determining the factual sufficiency of the elements of the offense, the reviewing court "views all the evidence without the prism of 'in the light most favorable to the prosecution,' [i.e., views the evidence in a neutral light,] and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis v. State*, 922 S.W.2d at 129.

*Johnson*, 23 S.W.3d at 6–7 (bracketed material in original). The Court further explained the court of appeals's task, as follows, "In conducting a factual sufficiency analysis, the reviewing court 'does not indulge inferences or confine its view to evidence favoring one side of the case. Rather it looks at all the evidence on both sides and then makes a predominantly intuitive judgment.' " *Id.*, at 7.

The Court also addressed the degree of deference the reviewing court must afford the fact finder.

> The degree of deference a reviewing court provides must be proportionate with the facts it can accurately glean from the trial record. A factual sufficiency analysis can consider only those few matters bearing on credibility that can be fully determined from a cold appellate record. Such an approach occasionally permits some credibility assessment but usually requires deference to the jury's conclusion based on matters beyond the scope of the appellate court's legitimate concern. [Footnote and citation omitted.] Unless the available record clearly reveals a different result is appropriate, an appellate court must defer to the jury's determination concerning what weight to give contra-

dictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered.

\* \* \*

In conclusion, the reviewing court must always remain cognizant of the fact finder's role and unique position, a position that the reviewing court is unable to occupy. The authority granted in *Clewis* to disagree with the fact finder's determination is appropriate only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest injustice. Otherwise, due deference must be accorded the fact finder's determinations, particularly those determinations concerning the weight and credibility of the evidence. *Id.*, at 8–9.

Finally, the Court held that its opinion in *Clewis* is to be read as adopting the complete civil factual sufficiency formulation.

> [T]he complete and correct standard a reviewing court must follow to conduct a *Clewis* factual sufficiency review of the elements of a criminal offense asks whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.

*Id.*, at 11.

After reviewing all the evidence admitted in this case in a neutral light, we do not find that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination. The evidence of

guilt has been well summarized in this opinion.

Nor do we find that the proof of guilt is greatly outweighed by contrary proof. For the defense, Snyder testified that there was a third car that moved to the left just before appellant's vehicle struck the Hyundai; that the Hyundai's taillights were not on; and that appellant did not appear to be intoxicated. Appellant's father, Reckling, and Whilden also testified that appellant did not appear to be intoxicated. In addition, the defense's expert, James, testified that, according to his calculations, appellant's vehicle was traveling 80 miles per hour at impact.

This contrary proof, however, does not greatly outweigh the proof that appellant's intoxication caused the deaths of Faul and Alford. Snyder's testimony concerning the presence of the third car on the highway was contradicted by the testimony of State's witnesses Meier and Ciaccio. That the right rear taillight was burning at the moment of impact was the testimony of Spence, who tested the bulb at the crime lab. Appellant's state of intoxication was attested to by Neubauer, by appellant's admissions to the nurses that he had been drinking throughout the day and immediately before the collision, and by the blood test results. Regarding appellant's speed at impact, Trooper Bryce testified that it was between 90 and 111 miles per hour, the exact speed depending on how many, if any, of the wheels on appellant's vehicle locked at impact. Bryce concluded that the most likely scenario was that the front wheels locked from metal collapse, indicating a speed of 95 to 96 miles per hour. Meier and Ciaccio testified that appellant's vehicle passed them at over 100 miles per hour shortly before the collision.

Because the jury's decision on guilt relied on its assessment of the credibility of the witnesses, we defer to its findings and hold the evidence was factually sufficient to support the jury's verdict that the victims' deaths were caused by appellant's intoxication.

We overrule point of error two.

## STATE'S VOIR DIRE

█ In point of error three, appellant argues the trial court erred in overruling his objection to a portion of the State's voir dire that implied the defense had a burden to produce evidence on the issue of intoxication.

The State voir dired the venire panel concerning whether they could rely on the result of a blood test ordered by their own physician. A member of the venire said she might seek a second opinion. The assistant district attorney's response to the venireperson, and the bench conference that followed, were as follows:

[A.D.A.]: And you have a right to [seek a second opinion]. And the defense has a right in every case to seek a second opinion. And so this defendant is represented like all defendants by a lawyer and *they have a right to go out and get the blood tested themselves,* they have a right to do all of those things and Mr. DeGeurin is one of the best lawyers in the United States.

[Defense Counsel]: Excuse me. I object, but I would like to approach the bench.

(Sidebar conference outside the hearing of the jury:)

[Defense Counsel]: Judge, I am having trouble with that and I object to the prosecutor telling the jury that the defense has the opportunity or the right to go out and take a second opinion and produce evidence because the law is the defense does not have to produce any evidence and the prosecution cannot comment thereon. Now, whether or not

he intended or not, at this point it raises a question if we do not present evidence after what the prosecutor said, are we failing to do something. That's contrary, it shifts the burden of proof and it's contrary to law, but I would ask that you instruct the jury that the last comment by the State is not correct and you will get a charge from the court as to what the law is, words to that effect, otherwise I have to quash the panel.

[A.D.A.]: I disagree completely with what he's saying. I think we have a right to make those arguments and I think they are valid areas of discussion for juries during voir dire examination.

[Defense Counsel]: Let me modify my objection. If you would instruct the jury that the defendant has no burden to call any witnesses or produce any evidence in a criminal case.

The Court: The jury will certainly be instructed that the State has to prove their case beyond a reasonable doubt and you have no burden to produce evidence.

[Defense Counsel]: Can you tell them that now?

The Court: No. I'll tell them in my instructions. Certainly that's correct, you do have a right to get blood evidence. That's certainly something you can comment on. You can get evidence and basically I think that's all he said. They will be instructed in the charge that you do not have to produce any evidence.

[Defense Counsel]: I would ask that you do that right now.

The Court: No, I am not going to do that right now.

(Emphasis added.)

We find the trial court erred by refusing defense counsel's request to instruct the jury during voir dire that the defendant had no burden to produce evidence.

■ We must next determine whether the error was harmful. Rule 44.2 of the Rules of Appellate Procedure provides that constitutional error that is subject to a harmless error review requires reversal unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. Tex.R.App.P. 44.2. We find that the error was not of constitutional magnitude. We therefore evaluate whether appellant's substantial rights were affected.

■ A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997). A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998).

■ We find the error did not have a substantial and injurious effect or influence in determining the jury's verdict. The trial court's refusal to give the requested oral instruction could not have misled the jury into believing appellant had a burden of producing evidence or any burden of proof in this case. This is because defense counsel voir dired the jury extensively concerning the presumption of innocence, the State's burden of proof, and the fact that, as he stated, "[T]he defendant has no burden whatsoever, doesn't have to call a single witness, doesn't have to say a word, the burden is on the State." In addition, the jury was correctly charged

by the court regarding the State's burden of proof beyond a reasonable doubt and that "[t]he law does not require a Defendant to prove his innocence or produce any evidence at all."

We overrule point of error three.

## DENIAL OF CHALLENGES FOR CAUSE

In points of error four and five, appellant argues the trial court erred in denying his challenges for cause to venirepersons Farley and Fowler.

Defense counsel questioned the venire panel about whether they could consider probation in an intoxication manslaughter case in which the accused had a prior conviction for driving while intoxicated. A number of venirepersons, including Farley and Fowler, responded that they could not. Farley was questioned at the bench, in part, as follows:

[Defense Counsel]: I had asked you earlier about would you consider probation in the beginning and I had added in after awhile I added in where [it] was a prior DWI. Take that out, the DWI part. Take the prior DWI probation out. I am going to ask you again, could you consider probation where a person when you found a person guilty of intoxicated manslaughter causing the death of two people could you consider probation as a possible punishment?

Farley: *I would say yes excluding knowing that he had a prior conviction for DWI. . . .*

. . .

[Defense Counsel]: But if you were to hear that he had a prior probation then you would not consider that as a possible punishment under any circumstances?

Farley: That's correct.

[A.D.A.]: But you can envision as you said a situation where you could consider probation for this type of offense?

Farley: *I could definitely consider probation without the knowledge that he had been convicted before.*

The Court: Thank you.

[Defense Counsel]: Challenge for cause.

The Court: Overruled.

(Emphasis added.)

Fowler was also questioned at the bench, in pertinent part, as follows:

[Defense Counsel]: Ms. Fowler, I had asked you earlier today whether you could consider probation for someone convicted in this case. I also added in there and the person had prior probation. Take that out. I can't ask you that. Can you consider probation to someone that you have found guilty of— if you found a person guilty of intoxicated manslaughter, two people were killed, now the question is could you under those circumstances consider probation to that person you found guilty?

Fowler: *Only if he had absolutely nothing else on his record.* I just lived with an alcoholic and I can't do it.

[Defense Counsel]: You lived with an alcoholic?

Fowler: I did. I was married to one. Okay? And I just—I can't do it. I am sorry.

[Defense Counsel]: *So, if the second question would be if you were to learn that he had a prior probation for DWI under that circumstance you could never consider probation?*

Fowler: *I couldn't.* If he messed up the first time and did it again, messed up after the first time then the history that I have lived with it's going to happen again and again. I can't live with it. If you give me a second—I'll say in a whole different case I am not totally

one-sided. If you remember the case Bradley, I guess I was the only person for Galveston County who said he absolutely could not be guilty. That's a whole different thing.

The Court: Mr. Drosnes?

. . .

[Prosecutor]: What we are about is not to use you as a ping pong ball. We don't want to give you the impression that we are trying to tear you apart here. The question is you haven't heard the evidence?

Fowler: True.

[Prosecutor]: And we can't tell you what the evidence is. You are an intelligent woman. The question is this, can you envision a scenario, can you envision a fact situation that would authorize you to consider probation? There are thousands of fact situations out there and intoxication manslaughter—there are fact situations where the defendants have no prior criminal history, a good likelihood is going to be rehabilitated. You don't know that until you hear the evidence.

Fowler: That's true.

[Prosecutor]: The question is can you wait until you hear the evidence and can you say at that point I'll consider probation until I hear the evidence and I make up my own mind?

Fowler: I am afraid I have made it up. I am sorry. I do that. It's just a whole total block.

The Court: He's not asking you what you would do in this case. The question is can you consider probation in a case where a person was—

Fowler: *Not if it's happened before this.*

[Prosecutor]: That's a scenario that you could consider probation?

Fowler: That's about the only thing I can think of.

(Emphasis added.) The trial court overruled defense counsel's challenge for cause to Fowler.

■ Appellant claims the trial court erred in denying these two challenges for cause because the venirepersons were biased against a phase of the law upon which he was entitled to rely, namely, the minimum punishment. *See* TEX.CODE CRIM.P. art. 35.16(c)(2). Appellant filed an application for probation, and maintains he was eligible for probation from a jury. *See* TEX.CODE CRIM.P. art. 42.12 § 4. Bias against the range of punishment is a proper area for challenges for cause. *Williams v. State,* 773 S.W.2d 525, 536 (Tex.Crim. App.1988).

■ However, the trial court did not err in denying appellant's challenges for cause because appellant's questions were improper to disqualify the venirepersons for cause. A juror must only be able to consider probation as punishment in a proper case for an offense as defined by law. Appellant's conviction for driving while intoxicated was not an element of the intoxication manslaughter case; it was evidentiary only. A venireperson is not disqualified merely because he or she could not consider probation under the specific facts of the case being tried that go beyond the elements of the offense. *See Sadler v. State,* 977 S.W.2d 140, 142 (Tex.Crim.App.1998); *McCoy v. State,* 996 S.W.2d 896, 899 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd); *see also White v. State,* 629 S.W.2d 701, 706 (Tex.Crim.App. 1981). As the Court explained in *Sadler:*

The law *requires* jurors to use the facts to tailor the punishment to the crime as committed by the guilty defendant. As such, it would be nonsensical to rule that a juror who will use the facts to fit the punishment to the crime is unqualified

and thus challengeable for cause—such a juror would be doing exactly what the law requires.

. . .

We hold that a prospective juror is not challengeable for cause because he or she will use the facts to determine punishment. A prospective juror is not challengeable for cause based on inability to consider the full range of punishment so long as he or she can consider the full range of punishment for the offense as defined by law.

*Id.* at 143. (Emphasis in original.)

The proper question to determine bias against the law regarding punishment would have been whether, in a proper intoxication manslaughter case as defined by statute, where the facts justify it, the venireperson could fully and fairly consider the entire range of punishment, including the minimum and maximum. *Sadler,* 977 S.W.2d at 142.

██ Both Farley and Fowler expressed that they could consider probation in a proper intoxication manslaughter case. Thus, they were not biased against the law regarding punishment.

Appellant relies on *Johnson v. State,* 982 S.W.2d 403, 404–05 (Tex.Crim.App.1998). In that case, the Court of Criminal Appeals held that prospective jurors were challengeable for cause because they could not consider the minimum punishment for a defendant found guilty of aggravated robbery as a principal. The Court reasoned:

[T]he Legislature has determined and codified that the full range of punishment for any offense is the same whether the defendant is found guilty as a principal or as a party. Therefore, a prospective juror who does not "believe in the full range of punishment," [cita-

tion omitted] for either a defendant found guilty as a principal or a defendant found guilty as a party, is biased against the law as established by the Legislature.

*Id.* at 406.

██ The present appeal is not controlled by *Johnson.* As Judge Keller pointed out in her concurring opinion, "[T]he law of parties, when implicated, is functionally an element of the offense tried, . . . ." *Id.* at 410 (Keller, J., concurring). We agree that criminal responsibility is a functional element of an offense, and, thus, part of the offense "as defined by law" for which prospective jurors must be able to consider the entire range of punishment.

By contrast, appellant's prior misdemeanor conviction for driving while intoxicated is not elemental to, nor part of, the offense of intoxication manslaughter. It is merely a peculiar fact relating to punishment in this particular case, and not "the law applicable to the case" for which prospective jurors could be challenged for cause.

Appellant also cites *Post v. State,* 936 S.W.2d 343 (Tex.App.—Fort Worth 1996, pet. ref'd). In that case, four counts of aggravated robbery were tried together, and two venirepersons expressed their inability to consider probation for a person whom they had found guilty of committing multiple aggravated robberies. *Id.* at 346. The court of appeals held that the trial court erred in overruling the defense challenges for cause. In that case, the defense was entitled to jurors who could consider the full range of punishment if they found the defendant guilty of all counts, *as charged.* In the present case, appellant's prior misdemeanor driving while intoxicated conviction was not part of the State's charges against him; it was merely eviden-

tiary on the issue of punishment. We find the circumstances of *Post* to be inapposite to this appeal.

We overrule points of error four and five.

### STATE'S JURY ARGUMENT ON GUILT

In point of error six, appellant complains of the following remarks of the prosecutor during his jury argument at the conclusion of the guilt stage:

> [A.D.A.]: And I tell you one thing, if it's a not guilty verdict or if it's a verdict of criminally negligent homicide, these folks will be going to celebrate tomorrow.
>
> [Defense Counsel]: You know, Judge, that's improper argument and I object to it.
>
> [A.D.A.]: Judge, I feel it's certainly proper. It's argument.
>
> The Court: Objection overruled.
>
> [A.D.A.]: And they are probably going to be celebrating at the Tremont House.
>
> [Defense Counsel]: Judge, if you don't stop it now it's going to be even worse and I object to it. It's outside the record and it's also—and if you want me to state it up there I will, but it's obviously improper argument.
>
> The Court: As far as going to the Tremont House, objection sustained.
>
> [A.D.A.]: I tell you who won't be there, and that's two poor kids from Galveston County who didn't deserve, who didn't deserve what this man did to them. And I tell you what these two kids, what these two poor Galveston County kids will never get to do in their lives, they will never get a chance to have flaming desserts in a fancy restaurant.

■ Appellant waived any objection to all but the first argument because he did not object or pursue the objection to an adverse ruling. *Cockrell v. State,* 933 S.W.2d 73, 89 (Tex.Crim.App.1996).

■ There are four permissible areas for jury argument: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) answers to the argument of opposing counsel, and (4) pleas for law enforcement. *Cifuentes v. State,* 983 S.W.2d 891, 895 (Tex.App.—Houston [1st Dist.] 1999, pet. ref'd).

■ We find the State's argument that appellant would celebrate if the jury returned a verdict of not guilty or guilty of criminally negligent homicide does not fall into any of these categories and was therefore improper. We next consider whether the error was harmful. Tex.R.App.P. 44.2(b). We apply the three factors established by the Court of Criminal Appeals for analyzing harm from improper jury argument in *Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App.1998). The factors are: (1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Id.; Cifuentes,* 983 S.W.2d at 896.

■ The prejudicial effect of the prosecutor's remarks was not severe. The remarks, while improper, were merely speculative of what appellant might do if found not guilty of the charges, or guilty of the lesser offense of criminally negligent homicide. Concerning the second factor, no curative instruction was given by the trial court. Finally, we find that the argument did not affect the certainty of conviction. The State's case was strong, as already addressed in this opinion. Thus, we find the error was harmless.

We overrule point of error six.

## STATE'S JURY ARGUMENT
## ON PUNISHMENT

 In point of error seven, appellant contends the State improperly argued at punishment that the victims' families did not want restitution. Appellant argues that, because the trial court granted the State's motion in limine to prevent the defense from mentioning the civil settlements and because such evidence was not offered at trial, the State's argument was outside the record.

The record reflects the following concerning the State's argument:

[A.D.A.]: Restitution, what is that? Money? They don't want a penny from this man.

[Defense Counsel]: Excuse me, Your Honor. That's outside the record.

The Court: Objection sustained.

[A.D.A.]: Judge, he argued that.

The Court: Come on back up here.

(The following proceedings were had outside the presence of the jury.)

[Defense Counsel]: Comes now the Defendant out of the presence of the jury and moves for a mistrial. Throughout the trial we have by request of the State and granted by the Court not been allowed to get into the evidence that the family sued for money, paid both families, paid in excess of two hundred and fifty thousand dollars each, and that they even sued each other for money, and for the prosecutor now to state outside the record that he's not interested in money. Number 1, no one in the family testified they were not interested in money, and number two, the evidence that I was not allowed to put on shows that they were interested in money and were paid. So in light of that I move for a mistrial.

The Court: Objection sustained. Motion for mistrial is denied.

[Defense Counsel]: I ask that you instruct the jury that they must disregard the last statement of the prosecutor, and if they are unable to do so, tell us now.

[A.D.A.]: My argument was in response to Mr. DeGeurin's argument. He mentioned the word restitution countless times. He wants to compensate the victims, a percentage of his income going to the victims.

The Court: You said they are not interested in money?

[A.D.A.]: From this man.

The Court: They got money from the insurance company. Because of the fact we kept that out, you need to stay away from it.

[Defense Counsel]: I ask that the jury— so I don't have to move for a mistrial, could you tell me, Judge, what you intend to do?

The Court: I will just tell them to disregard anything that Mr. Ibrahim said about money.

[Defense Counsel]: Because I believe that is not sufficient, I'll move for a mistrial, but not in front of the jury, at this time.

The Court: Motion denied.

Ladies and gentlemen, I sustained the objection to Mr. Ibrahim's last statement. You are instructed to disregard anything that is said about money. It's not a part of this case and not anything for you to consider and you are instructed not to consider it. You may proceed.

Even assuming the State's argument was improper, the trial court's prompt and strong instruction to disregard was sufficient to cure any error. *Guidry v. State*, 9 S.W.3d 133, 154 (Tex.Crim.App.1999). The motion for mistrial was properly denied.

We overrule point of error seven.

## DEADLY WEAPON FINDING

In point of error eight, appellant challenges the legal sufficiency of the evidence to prove that he used or exhibited a deadly weapon, arguing that the State did not prove "use" of the automobile as a deadly weapon "according to what the Legislature intended when it created the deadly weapon provision of Article 42.12." [4] In point of error nine, he argues that the trial court erred in submitting the issue of the use or exhibition of a deadly weapon to the jury for the same reason.

The intoxication manslaughter paragraphs of the two indictments alleged that appellant "did use or exhibit a deadly weapon, to-wit: an automobile that in the manner of its use or intended use was capable of causing death or serious bodily injury." In addition, the trial court submitted a special issue on the use or exhibition of a deadly weapon in its guilt charges, which the jury answered affirmatively in both cases.

Appellant makes the same argument raised and rejected by the Court of Criminal Appeals in *Walker v. State*, 897 S.W.2d 812, 814 (Tex.Crim.App.1995), and *Tyra v. State*, 897 S.W.2d 796, 798–99 (Tex.Crim. App.1995).[5] That is, appellant contends an affirmative finding of the use or exhibition of a deadly weapon is permitted only when there is evidence of actual intent to use the object to cause harm.

In *Tyra*, the Court held:

Tyra was convicted of involuntary manslaughter, accidentally killing a man with his pickup truck because he was too drunk to control the vehicle. Our precedents establish that anything, including a motor vehicle, which is actually used to cause the death of a human being is a deadly weapon. . . . It follows that Tyra's pickup was undoubtedly a deadly weapon in the instant cause.

*Id.* at 798.

In *Walker*, the Court held:

We therefore hold that the operation of an automobile may constitute the use of a deadly weapon under a prosecution under § 19.05(a)(2). We further hold that no intent to use the automobile as a weapon need be shown.

*Walker*, 897 S.W.2d at 814.

Based on these precedents, we overrule points of error eight and nine.

We affirm the judgments.

Justice O'CONNOR dissents from the denial of the further motion for rehearing and for rehearing en banc.

A majority of the justices of the Court voted to deny the further motion for rehearing en banc.

O'CONNOR, Justice, dissenting on further motion for Rehearing and for Rehearing En Banc.

I dissent from the majority's resolution of points of error one and two.

The appellant collided with the victims early one morning on a busy freeway between Houston and Galveston. One of the victims of the collision was sitting in the stalled car and the other was behind the car pushing it. The majority's analysis ignores the possibility that collision occurred because the victims' car was immobile on a fast-moving freeway, it was dark and visibility was not good, and one of the victims was blocking the taillights of the car. These factors alone could have made

---

**4.** Tex.Code Crim.P. art. 42.12 § 3g(a)(2).

**5.** The defendants in *Walker* and *Tyra* were convicted of involuntary manslaughter under former Penal Code section 19.05(a)(2). (See footnote 2 of this opinion.)

the collision inevitable, regardless of the appellant's intoxication.

I do not believe the jury could find, beyond a reasonable doubt, that the appellant's intoxication was responsible for the collision. In fact, the jury's assessment of only four years imprisonment in each case is some indication that it was less than certain the appellant's intoxication caused the collision.