Affirmed and Memorandum Opinion filed November 4, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00074-CR

___________________

 

Brian Joseph Edwards, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 85th District Court

Brazos County,
Texas



Trial Court Cause No. 06-04158-CRF-85

 



 

 

MEMORANDUM OPINION

            A jury found appellant Brian Joseph Edwards guilty of
intoxication manslaughter.  The jury found a deadly weapon allegation true and
assessed punishment at four years’ confinement.  The trial court sentenced
appellant accordingly.  In three issues, appellant challenges the sufficiency
of the evidence to support his conviction.  We affirm.

I.  Procedural
and Factual Background

            Around
2:30 a.m. on January 22, 2006, Jeremy Schneider left College Station driving
northbound on Highway 47, when he saw two vehicles in the southbound lane and
knew something was wrong because there were “no lights on, no EMS, no cops,
nothing.”  He crossed over to the southbound lane, approached the vehicles, and
saw a Ford F-250 truck in the median, a Chevrolet truck one hundred yards in
front of the F-250, one man in the middle of the two lanes, and another man in
the ditch.  Schneider called 911.  He then heard glass breaking and saw another
man trying to exit the F-250.  The man, subsequently identified as Hank
Oestreich, eventually managed to exit on the passenger side.  Schneider then
observed a man in the Chevrolet.  The man was conscious, but bleeding.

            Blake Barrentine, an emergency medical technician,
was dispatched at 2:56 a.m.; paramedic Alfonso Gonzales was dispatched at 2:58
a.m.  Barrentine first encountered the deceased, later determined to be Kyle
Hohmann.[1] 
Barrentine then treated appellant and transported him to a hospital.  Gonzales
treated the man in the Chevrolet and Oestreich, both of whom were also
transported to the hospital.

            Texas Department of Public Safety (DPS) Troopers
Michael Hubbard and Jonathan Hunter arrived shortly after 3:00 a.m.  Their
supervisor, Sergeant Mark Spillers, arrived later and videotaped the scene. 
Hubbard initially assessed the situation as involving a two-vehicle accident,
but he later determined there had been two separate accidents, with the first
accident, which involved only the F-250, being the fatal accident.

            Appellant was charged with intoxication
manslaughter for causing Hohmann’s death.  A jury trial followed.

The State’s Evidence

            In addition to evidence relating to the discovery
of the accident, the State elicited (1) evidence regarding the events preceding
the accident, the initial investigation at the scene, and the injuries
appellant and Oestreich sustained, (2) expert testimony on accident
reconstruction, (3) appellant’s statement to a friend, and (4) Oestreich’s
testimony about the accident.

Preceding
events.[2] 
On Friday, January 20, Hohmann, who lived in Llano, came to Mumford to spend
the weekend with appellant and Oestreich.  After Hohmann arrived at appellant’s
house, the three consumed beer and made plans to go out.  Later that evening,
they went to a local bar, eventually leaving when the bar closed.  Oestreich
estimated the three of them together consumed between sixty and seventy beers.

The
next day, Saturday, Hohmann, Oestreich, and appellant decided to “hang out at
the house, barbecue, and stuff like that.”  Two additional friends, Keith
Jackson and Dewey Stockbridge, joined them that afternoon, and another friend,
Dustin McLeod, joined later that night after he left work.  At some point in
the afternoon, the group started to drink beer again, but the drinking pace was
“pretty slow” because of the large amount of beer consumed the night before. 
Everyone was drinking, with the exception of Jackson.

Around
11:30 p.m., the group decided to drive to the Dixie Chicken, a bar located in
College Station.  Appellant drove his Ford F-250 truck, with Oestreich riding
in the front seat and Hohmann riding in the back seat.  The others followed in separate
vehicles.  Before arriving at the Dixie Chicken, appellant stopped at a parking
lot on the Texas A&M University campus to pick up McLeod, who had parked
there.  McLeod accompanied Hohmann in the back seat of appellant’s truck en
route to the bar.  The group arrived at the Dixie Chicken around midnight. 
Appellant consumed alcohol, some of which Oestreich purchased.  At some point
between 1:45 a.m. and 2:00 a.m., they decided to leave the bar.

The
group then returned to the campus parking lot so that McLeod could get his
vehicle.  For a few minutes, they discussed attending a party but decided to go
home for the night.  McLeod and Jackson observed appellant driving his Ford
F-250 truck, with Oestreich in the front passenger seat and Hohmann in the back
seat, when they left the parking lot to return home.

The
initial investigation.  As described above, Schneider discovered the
accident scene around 2:30 a.m. on January 22 and immediately called 911. 
Emergency medical technicians and Texas DPS officers responded.  Spillers,
Hubbard, and Hunter, of the DPS, described the night as very cold and dark,
with a slight mist beginning to fall when they arrived on the scene.  They saw
a Ford F-250, which was “absolutely totaled.”  No glass, lights, or reflectors
were intact on the vehicle.  They observed a Chevrolet, which was damaged, but
not to the extent of the F-250.  Spillers conducted a videotaped walk-through
of the scene.  He described marks where the F-250 skidded off the roadway on
the inside shoulder, a gouge where it started rolling, a depression in the
median where part of the F-250 struck, a place on the pavement the F-250 hit in
the process of rolling or flipping, and the point on the southbound lane where
the F-250 came to rest and the Chevrolet then collided with it. 

After
conducting the investigation, Spillers specifically stated he was of the opinion
appellant, the driver, and Hohmann, the rear passenger, were ejected because
they were not secured by their seatbelts.  The front passenger was secured by a
seatbelt and remained in the vehicle until it came to rest on Highway 47.  The
police report, however, did not contain any information about the condition of
the seatbelts.[3]

            Appellant’s and Oestreich’s injuries. 
Appellant arrived at the hospital “deeply unconscious.”  He was diagnosed with
an acute subdural hematoma and underwent brain surgery to relieve the pressure
on his brain and reduce blood accumulation.  The doctor explained appellant had
a hematoma on the right side of his brain, which is generally caused by being
struck on the left side of the head.  Additionally, the doctor stated it is common
to have some type of amnesia with this type of head injury.

            Oestreich was also treated in the emergency room. 
He sustained lacerations mainly on the right side of his body.  According to the
emergency room doctor and hospital records, Ostereich was not comatose, but had
lacerations on the back of his head, his right ear, right hand, and right knee. 
Additionally, the hospital records indicated Ostereich had abrasions on the
front and back of his left shoulder and on his right hip.

Expert
testimony.  Land-vehicle-collision expert Tim Lovett testified he reviewed
police reports, medical records, the scene of the collision, the vehicles
involved, and the videotape of the scene.  After personally viewing the scene,
he created a diagram that showed appellant’s vehicle leaving the roadway and
eventually rolling over.  Lovett stated he was not certain, but, based on the
evidence, believed appellant’s truck rolled two times.  Based on damage to the
truck, he opined, “Through the initial part you’ve got a shifting of the cab
area from the driver’s side toward the passenger side being crushed down and
in. This damage at this point is from the second collision where the General
Motors pickup slams into the side of the pickup.”  Lovett then described the
second collision, concluding that the Chevrolet initially slammed into the side
of the F-250 after which the F-250 rotated and the backs of the two trucks collided.

Lovett testified he saw no evidence in Spillers’s
videotape to indicate the driver’s seatbelt had been used.  In contrast,
extension of the mechanisms for, and stress and strain to, the passenger’s belt
could be caused by use of the belt.  There was, however, insufficient view of
the actual seatbelt in the video for Lovett to make any determinations. 
Finally, Lovett testified that, in his opinion, there was no evidence that
would lead him to believe that there were any external factors, such as the
roadway or otherwise, that contributed to the cause of the incident.

Appellant’s statement to a friend.  Stockbridge
testified about the events of January 21 up until he left appellant, Hohmann,
and Oestreich at the campus parking lot.  He also testified about a
conversation he had with appellant in May 2006 regarding Stockbridge’s cousin
being killed in a four-wheeler accident.  In that conversation, appellant told
Stockbridge something to the effect of “You ought to have to live with what
I’ve done,” or “You should feel what I feel.  I killed my best friend.” 
Stockbridge believed appellant was referring to the January 2006 accident.

Oestreich’s testimony.  Oestreich testified that, after leaving
the Dixie Chicken, the six men drove to the parking lot on the campus of Texas
A&M University, returned McLeod to his vehicle, and discussed attending a
party but decided to return home.  Oestreich stated that, when they left the
parking lot, he was riding in the front passenger seat, appellant was driving,
and Hohmann was riding in the middle of the back seat.  Oestreich testified
they did not attend a party nor make any stops on the way home.[4]

Oestreich
further testified that, as appellant drove toward his house in Mumford via
Highway 47, appellant turned to speak to Hohmann in the back seat, at which
point the F-250 veered off the road and onto the shoulder of the roadway.  Appellant
overcorrected, causing the truck to slide and roll, passenger side first. 
Oestreich recalled he was wearing his seatbelt; however, he was not sure
whether appellant or Hohmann were using seatbelts.  Oestreich did not remember
how many times the truck rolled but stated that it felt like more than one
time, and he recalled the truck came to rest on its
tires facing oncoming traffic.  Oestreich believed he lost consciousness after
the Chevrolet collided with appellant’s vehicle.  The next thing Oestreich
recalled was seeing appellant lying in the road not moving.

Oestreich
testified he did not remember having any severe injuries on his left side.  Oestreich
also stated that, at the hospital, he told an officer appellant was driving his
own vehicle at the time of the rollover accident.  Contrary to Oestreich’s
testimony, an insurance investigator testified that Oestreich described the
events of the accident to her, but as they continued to talk he stated “well,
you know, I’m just not really sure what happened.  I just — I can’t remember.”

On
cross-examination, Oestreich admitted he would have driven appellant’s truck if
he believed appellant was intoxicated.  He also admitted he bought appellant
beers at the Dixie Chicken.  Nevertheless, he did not believe appellant was
intoxicated on the night of the incident.  Additionally, Oestreich did not
remember telling hospital personnel he did not consume alcohol that night, or
that he had no memory of the accident, as indicated in the medical report.  He
further testified he “never had a doctor ask [him] anything about drinking or
remembering anything about the car wreck.”

According
to Oestreich, the hospital records pertaining to a bruise on the left side of
his body were inaccurate.  Oestreich, however, did admit having other
lacerations on his left side.  He also admitted appellant had fourteen beers
the evening of the accident, and that he previously lied to investigators about
the amount of alcohol consumed in an effort to protect appellant.  Oestreich
stated he did not recall contacting appellant’s mother regarding what appellant
remembered about the accident.

Defense Evidence  

Among
other witnesses, appellant called accident reconstsructionist James Lock and
appellant’s mother, Sandra Edwards.  Appellant also testified in his own
behalf.

Lock’s
testimony.  Lock testified that he was not able to make any
determination or draw any conclusions from the condition of the seatbelt stalks
in appellant’s vehicle.  He also opined one cannot make a determination about which
side of a vehicle an individual occupied when a rollover precedes a side-impact
crash.  According to Lock, a properly restrained individual involved in a
rollover gets flailed about the vehicle, and one cannot differentiate between
injuries stemming from a rollover or side-impact collision.  Additionally, Lock
reviewed Oestreich’s medical records and reasoned the bruising on the left
shoulder, clavicle, and chest was consistent with injuries sustained from the
upper portion of the driver’s restraint system.

On
cross-examination, Lock conceded he did not have any reason to discredit the
state’s expert’s credentials.  Lock stated that the two merely had differing
opinions on the seatbelt stalks inside appellant’s vehicle, and admitted that,
in watching the video of the investigation, he would not expect to see any evidence
that would tell him the driver’s side seatbelt had been used.  Lock also
conceded he did not know anything about the crash and never conducted any
personal physical examination of appellant’s vehicle.

Appellant’s
mother’s testimony.  Sandra Edwards testified Oestreich called her
three times asking whether appellant had told her anything about the accident. 
When Oestreich called the first time, immediately after Hohmann’s funeral, Sandra
Edwards told Oestreich appellant was still in a coma.  When Oestreich called
the second time, appellant was in a neurological rehabilitation center in
Austin, and Oestreich did not inquire about appellant’s condition.  When
Oestreich called the third time, it was the day after appellant had returned
home, and Oestreich again did not ask about appellant’s condition.

Appellant’s
testimony.  Appellant testified he had no memory of the accident.  He
conceded he could not tell the jury he was not driving the night of the
incident.  Additionally, appellant did not contest that he was intoxicated the
night Hohmann was killed as a result of the accident on highway 47.  When asked
about a conversation with a friend in which he stated, “You should feel what I
feel, I killed my best friend,” appellant testified he did not remember this
conversation, but “that’s what the police report said, that — that’s all I can
go by.”

II.  Sufficiency of the Evidence

In
issue one, appellant argues the evidence is legally insufficient to establish
he committed the offense of intoxication manslaughter.  In issue two, he argues
the evidence is factually insufficient to establish he committed the offense. 
In issue three, he argues the evidence is factually insufficient to support a
conviction because the conviction is based on accomplice testimony that was not
corroborated in accordance with Texas Criminal Procedure Code article 38.14.

In
evaluating a legal-sufficiency challenge, we view the evidence in the light
most favorable to the verdict.  Wesbrook v. State, 29 S.W.3d 103, 111
(Tex. Crim. App. 2000) (citing Jackson v. Virginia, 443 U.S. 307, 319, 99
S. Ct. 2781, 2789 (1979)).  The issue on appeal is not whether we, as a court,
believe the State’s evidence or believe that appellant’s evidence outweighs the
State’s evidence.  Wicker v. State, 667 S.W.2d 137, 143 (Tex. Crim. App.
1984).  The verdict may not be overturned unless it is irrational or
unsupported by proof beyond a reasonable doubt.  Matson v. State, 819
S.W.2d 839, 846 (Tex. Crim. App. 1991).  The jury, as the trier of fact, “is
the sole judge of the credibility of the witnesses and of the strength of the
evidence.”  Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim. App.
1999).  The jury may choose to believe or disbelieve any portion of the
witnesses’ testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim.
App. 1986).  When faced with conflicting evidence, we presume the trier of fact
resolved conflicts in favor of the prevailing party.  Turro v. State,
867 S.W.2d 43, 47 (Tex. Crim. App. 1993).  Therefore, if any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt, we must affirm.  McDuff v. State, 939 S.W.2d 607, 614 (Tex. Crim.
App. 1997).

In
conducting a legal-sufficiency review, we treat direct and circumstantial
evidence equally.  Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App.
2007).  “‘Circumstantial evidence is as probative as direct evidence in
establishing the guilt of an actor, and circumstantial evidence alone can be sufficient
to establish guilt.’”  Id. (quoting Hooper v. State, 214 S.W.3d
9, 13 (Tex. Crim. App. 2007)).

A
majority of the judges of the Texas Court of Criminal Appeals recently determined
that the Jackson v. Virginia standard is the only standard a reviewing
court should apply to determine whether the evidence is sufficient to support
each element of a criminal offense the State is required to prove beyond a
reasonable doubt.  See Brooks v. State, —S.W.3d—,—, No. PD-0210-09, 2010
WL 38946l3, at *1 (Tex. Crim. App. Oct. 6, 2010) (plurality op.) (Hervey, J., joined
by Keller, P.J., Keasler, and Cochran, J.J.); id., 2010 WL 38946l3,
at *14–15 (Cochran, J., concurring, joined by Womack, J.) (same conclusion as
plurality).  Accordingly, in reviewing appellant’s issues, we apply the Jackson
v. Virginia standard as articulated in the preceding paragraphs and do not
separately refer to legal or factual sufficiency.

A.       Is
the evidence sufficient to establish that (1) appellant was the operator of the
motor vehicle and (2) appellant caused Hohmann’s death because of appellant’s
intoxication?

A person commits the
offense of intoxication manslaughter if that person (1) operates a motor
vehicle in a public place, (2) while intoxicated,[5] and (3) by reason of that
intoxication, causes the death of another person by accident or mistake.  Tex. Penal Code Ann. § 49.08(a) (West
Supp. 2009); Garcia v. State, 112 S.W.3d 839, 852 (Tex. App.—Houston
[14th Dist.] 2003, no pet.).  It is not enough that operation of a motor
vehicle, even when operated by an intoxicated person, causes death; rather, the
State must prove that the defendant’s intoxication caused the fatal result.  See
Daniel v. State, 577 S.W.2d 231, 233–34 (Tex. Crim. App. 1979); Glauser
v. State, 66 S.W.3d 307, 313 (Tex. App.—Houston [14th Dist.] 2000, pet.
ref’d).

1.  Did the evidence prove
appellant was operating the vehicle?  

Appellant first challenges the sufficiency of the
evidence to establish he was the driver of the Ford F-250.  The following circumstantial
evidence supports that fact:

·       
Appellant’s testimony he grew up in Llano, Texas, and Hubbard’s
testimony the registered owner of the Ford F-250 was Bill Edwards of Llano,
Texas;

·       
Multiple witnesses’ testimony appellant drove his truck to the
Dixie Chicken and from the Dixie Chicken to the campus parking lot, where
McLeod had parked his car;

·       
McLeod’s and Jackson’s testimony that, as everyone was leaving
the parking lot, McLeod and Jackson observed appellant driving his Ford F-250
truck, with Oestreich in the front passenger seat and Hohmann in the back seat;

·       
Evidence indicating the accident occurred shortly after
appellant, Oestreich, and Hohmann left the parking lot with appellant driving
(i.e., testimony the six men (1) left the Dixie Chicken between 1:45 a.m. and
2:00 a.m., (2) traveled to, and stopped at, the campus parking lot, and (3) decided,
after talking for a few minutes, to go directly home instead of going to a
party, coupled with Schneider’s testimony he discovered the accident around
2:30 a.m.);

·       
Evidence appellant and Hohmann were thrown from the car, but
Oestreich was not, coupled with Lovett’s testimony the stress and strain shown
in the videotape of the front passenger seatbelt could be caused by use of the
belt and his testimony he saw no evidence the driver’s side seatbelt had been
used; and

·       
Appellant’s statement to Stockbridge that appellant “killed [his]
best friend.”

 

            In addition to the preceding circumstantial
evidence, Oestreich testified appellant was driving the F-250 truck.

Appellant,
however, contends bruising on Oestsreich’s left shoulder, left chest and down
to his right hip indicates Oestreich was driving because such bruising was
consistent with Oestreich’s wearing the driver’s-side seatbelt.  He further
contends Oestreich, believing appellant had died, lied to protect himself.  At
trial, appellant attempted to impeach Oestreich by eliciting Oestreich’s
disagreement with notations in the medical records and by eliciting Oestreich’s
admission he had lied about how much appellant had to drink.  Appellant also
elicited evidence suggesting that, after the accident, Oestreich was more
interested in what appellant remembered about the accident than he was in
appellant’s condition.

It was for the jury to determine the credibility of
the witnesses and the strength of the evidence.  See Fuentes, 991
S.W.2d at 271.  We conclude the evidence is sufficient to establish appellant
was operating the vehicle.

2.  Did the evidence prove appellant’s
intoxication caused Hohmann’s death?  

Appellant
next contends the evidence is insufficient to prove his intoxication caused
Hohmann’s death.  Under the Texas Penal Code, “A person is criminally
responsible if the result would not have occurred but for his conduct,
operating either alone or concurrently with another cause, unless the
concurrent cause was clearly sufficient to produce the result and the conduct
of the actor clearly insufficient.”  Tex.
Penal Code Ann. § 6.04(a) (West 2003); Garcia, 112 S.W.3d at 852.
 Whether such a causal connection exists is a question for the jury’s
determination.  See Hardie v. State, 588 S.W.2d 936, 939 (Tex. Crim. App.
1979); Thomas v. State, 756 S.W.2d 59, 61 (Tex. App.—Texarkana 1988,
pet. ref’d).  The State must prove the causal connection between appellant’s
intoxication and the complainant’s death.  See Daniel, 577 S.W.2d at
233–34; Glauser, 66 S.W.3d at 313.  A jury may draw reasonable
inferences regarding the ultimate facts from basic facts.  Lacour v. State,
8 S.W.3d 670, 671 (Tex. Crim. App. 2000); Garcia, 112 S.W.3d at 853. The
jury also may use circumstantial evidence to establish a causal connection.  Garcia,
112 S.W.3d at 853

“But
for” causation, as set forth in section 6.04(a) of the Texas Penal Code, must
be established between an accused’s conduct and the resulting harm.  See
Robbins v. State, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986).  When
concurrent causes are present, the “but for” requirement is satisfied when
either (1) the accused’s conduct is sufficient by itself to have caused the
harm; or (2) the accused’s conduct coupled with another cause is sufficient to
have caused the harm.  Id.  If an additional cause, other than an
accused’s conduct, is clearly sufficient by itself to produce the result and the
accused’s conduct by itself is clearly insufficient, then the accused cannot be
convicted.  Id.

Appellant
does not dispute he was intoxicated.  Further, assuming appellant was the
driver, he concedes “the State proved through the DPS officers and their expert
. . . that as a result of Appellant’s intoxication, the rollover accident
occurred.”  He argues, however, there was no proof affirmatively linking
Hohmann’s death to the rollover accident.  Appellant suggests the accident
involving the Chevrolet might have caused Hohmann’s death and points to the
driver’s testimony he was tired and did not see appellant’s disabled vehicle in
the roadway.[6]

The
physical evidence and Lovett’s uncontroverted testimony established the
following: (1) the Ford F-250 was initially traveling northbound on Highway 47;
(2) the F-250 left the northbound lane and rolled over at least once and
possibly twice, crossing the median between the northbound and southbound
lanes; (3) exit points in the cab of the F-250 began to open up during the
initial contact between the F-250 and the road or the median; (4) Hohmann and
appellant were ejected from the F-250; (5) Hohmann’s body was found in a ditch
on the west side of the southbound lane; and (6) after the rollover, the F-250 came
to rest in the southbound lane, where the front of Chevrolet struck the
disabled F-250 on the side.  Thus, as Hubbard concluded, the initial accident
was the fatal accident, and the impact between the Chevrolet and the F-250 was
not a cause, much less a concurrent one, of Hohmann’s death.

We
conclude the evidence is sufficient to establish that appellant’s intoxication
caused Hohmann’s death.  

Having
concluded the evidence is sufficient to establish appellant was operating the
vehicle at the time of the accident and that his intoxication caused Hohmann’s
death, we overrule appellant’s first and second issues.

B.        Was appellant’s conviction improperly based on the uncorroborated
testimony of an accomplice witness?

Appellant
frames issue three as follows: “The evidence is factually insufficient to
support a conviction since the conviction was based upon accomplice testimony
that is not corroborated in accordance with TEX. CODE CRIM. PROC Art. 38.14.” 
Appellant did not request a jury instruction on accomplice-witness testimony
and did not object to the instructions given.  He nevertheless argues he “has
suffered egregious harm by [his] conviction being based upon uncorroborated
witness testimony.”  The State treats appellant’s argument as one directed at
the jury instructions.

Texas
Code of Criminal Procedure article 38.14 provides, “A conviction cannot be had
upon the testimony of an accomplice unless corroborated by other evidence tending
to connect the defendant with the offense committed; and the corroboration is
not sufficient if it merely shows the commission of the offense.”  Tex. Code Crim. Proc. Ann. art. 8.14 (West
2005).  An “accomplice witness” is
one who participates with another before, during, or after the crime.  Paredes
v. State, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004).  The test is whether
a prosecution will lie against the witness under the accused’s indictment.  Id.

Appellant
contends Oestreich was an accomplice because he admitted he bought most of
appellant’s beer at the Dixie Chicken.  Appellant provides no authority
supporting a claim Oestreich could be prosecuted under appellant’s indictment. 
He provides no authority supporting the premise that supplying alcohol makes
one an accomplice to intoxication manslaughter.  We have found none.

The
circumstantial evidence corroborating Oestreich’s testimony that appellant was
the driver is set forth in Section II.A.1, above, and we need not repeat it. 
Given this evidence, even were we to presume Oestreich met the definition of an
accomplice witness, we would conclude his testimony is sufficiently
corroborated to support appellant’s conviction.  

For
these reasons, we overrule appellant’s third issue.

Having
overruled appellant’s three issues, we affirm the judgment of the trial court.

 

 

            

                                                                                    

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

 

 

Panel consists of Justices
Anderson, Frost, and Seymore.

Do
Not Publish — Tex. R. App. P. 47.2(b).

 

 

 









[1]
Although the reporter’s record uses the spelling, “Hohman,” we use the spelling
in the indictment, i.e., “Hohmann.”  There was some initial confusion at the
scene about whether appellant or Hohmann was the deceased.





[2]
These events are derived from Oestreich’s testimony and that of three of the
other friends who were together on the night preceding the accident.





[3]
Spillers testified, “During the process, Unit 1 ejected Edwards the driver and
Hohman the rear passenger as they were not secured by their safety belts.  The
front seat passenger was secured by safetybelt [sic] and remained within the
vehicle until it came to rest on Highway 47.”





[4]An
insurance investigator, however, testified Oestreich told her “after they left the
Dixie Chicken, they went to a party at a female’s house.”





[5]
A person is considered to be “intoxicated” if that person (1) does not have the
normal use of mental or physical faculties because of the introduction of
alcohol or (2) has an alcohol concentration in his breath, blood, or urine of
.08 or more.  Tex. Penal Code Ann.
§§ 49.01 (2)(A), (B) (West 2003).





[6]
The State elicited testimony that, even though a cold mist was falling on the
night of the accident, other drivers had no difficulty negotiating the
highways.  In this court, appellant does not argue that weather or road
conditions were concurrent causes.